(No. 31835.

BENJAMIN G. LANDAU *et al.,* Appellees, *vs.* FRIEDA BREMLER LANDAU *et al.,* Appellants.

*Opinion filed September 21, 1951.*

WIMBISH, PAYNE & LEIGHTON, of Chicago, (GEORGE N. LEIGHTON, of counsel,) for appellants.

ETTELSON & O'HAGAN, of Chicago, (LEONARD B. ETTELSON, ROBERT E. SAMUELS, and MELVIN J. EHRLICH, of counsel,) for appellees Benjamin G. Landau *et al.;* CHARLES F. GRIMES, and EDWARD R. CULLEN, both of Chicago, for other appellees.

Mr. JUSTICE BRISTOW delivered the opinion of the court:

The plaintiffs, Benjamin G. Landau and Edith Landau Uitti, on November 20, 1947, filed a complaint in equity in the superior court of Cook County against Frieda Bremler Landau, individually, and as successor trustee under the will of Milton L. Landau, and David R. Landau, Jr., for the declaration of a trust and for removing certain clouds upon the title to property involved, and for an accounting from the trustees.

The complaint alleges that Milton L. Landau in his lifetime owned certain real estate in Cook County; that, on April 7, 1927, he executed a last will and testament, making gifts of certain property, and devising the residue of his estate to David R. Landau, hereafter referred to as "David, Sr.," as trustee, the income from this trust to be paid to David Landau, Sr., and Benjamin Landau, one half to each during their lifetime, with the remainder to certain

designated heirs of each of the said life tenants. The complaint further alleges that Milton L. Landau died on February 28, 1930, and his will was probated and the estate settled, whereby David, Sr., became vested and seized of said real estate, and became liable for the administration of said trust, as provided in said will; that David R. Landau, Jr., hereinafter referred to as "David, Jr.," after the death of his father, became vested in fee with one half of said residue; and that Edith Landau Uitti is the present prospective beneficiary in the other half of said residue, in case she survives Benjamin G. Landau.

The complaint also alleges that a quitclaim deed, purporting to convey the same property involved in the trust, was made on December 22, 1928, from Milton L. Landau to David, Sr., and Frieda, as cotenants, which instrument was not recorded until August 11, 1947, two months after the death of David, Sr. It is further alleged in the complaint that this deed was never delivered and remains a cloud upon the title; and that David, Sr., pursuant to the authority granted in his brother's will, designated his wife, Frieda Bremler Landau, as successor in trust to continue the administration of the trust estate. This was effectuated by a written instrument duly recorded.

The complaint also alleges that certain payments were made by David, Sr., trustee, to Benjamin G. Landau, commencing in 1938 and ending in 1944. The complaint further asserts that by the nondelivery of the quitclaim deed of December 22, 1928, whatever title to the residue property David Landau, Jr., has is acquired by virtue of the provision of Milton's will and not by the deed.

Frieda Bremler Landau filed an answer and denied that David, Sr., acquired title to said real estate as trustee under the will of Milton L. Landau, but acquired title to said real estate as grantee of said deed of December 22, 1928, and that neither David, Sr., as trustee, nor herself, as successor trustee, have any obligation to account to the plain-

tiffs for rents from said property; and denied all of the other material allegations claimed to create a liability.

David, Jr., filed a separate answer and alleged that the real estate in question was no part of the estate of Milton L. Landau; denied that David, Sr., became seized as trustee of said real estate; alleged that the quitclaim deed of December 22, 1928, was duly delivered, conveying the title to David, Sr., and Frieda, and that he and his mother, Frieda, succeeded to said title as heirs-at-law of his father, who died intestate.

On July 20, 1948, plaintiffs requested an accounting, and a decree was entered on July 28, 1948, referring the cause to a master to state an account, to hear evidence, and to report conclusions of law on other issues presented by the pleadings. After hearing testimony, the master filed his report, in which he found that the quitclaim deed in question was never delivered; that David, Sr., acted as trustee until the date of his death in June, 1947; that he had made a partial accounting to Benjamin G. Landau, but that he had made no payments to Benjamin G. Landau after December, 1944; and that the successor trustee, Frieda Bremler Landau, and defendant David R. Landau, Jr., were liable to account from the date of the death of David, Sr., in an amount aggregating $7750, with interest from the date of the report, October 25, 1949, until paid.

Objections to this report were overruled, as were exceptions by the defendants to the master's report, and a decree was entered. This decree sustains the master in all respects, except that it increased the liability of David R. Landau, Jr., and Frieda Bremler Landau to include the total period of the trust, from February 28, 1930, the date of the death of Milton L. Landau, through the lifetime of David, Sr., and from thence to the date of the decree.

It was decreed that David, Jr., and Frieda were to pay Benjamin G. Landau damages in the sum of $13,124, plus interest in the sum of $1804.55, making a personal judg-

ment against them in the sum of $14,928.55 and costs of suit. No decretal determination was entered with respect to the interest of Edith Landau Uitti.

Certain other defendants were in said cause in the superior court because of the fact that David, Jr., and Frieda, after the death of David, Sr., conveyed the property involved to one Ira Latimer, who in turn conveyed it to certain other parties, who have filed answers, and who claim they are entitled to the real estate without regard to the merits of the cause as between the original parties involved herein.

After entering the decree above, the court retained jurisdiction for the purpose of later determining the questions raised by the other defendants, and while the decree is designated as interlocutory, in that it does not decide the rights of all of the parties, it does decide the merits of the cause between the beneficiaries of the trust and the defendants, David, Jr., and Frieda.

The appellants, Frieda and David, Jr., bring this case to the Supreme Court alleging that a freehold is involved. Since the account was rendered by the court against the appellants upon specific finding that David, Sr., held title to the real estate in question as trustee, and that he acquired no title as grantee under the purported conveyance of December 22, 1928, because of the nondelivery of that instrument during the lifetime of the grantors, a freehold is clearly and necessarily involved. Consequently, this court finds itself with jurisdiction.

From the foregoing statement, it becomes apparent that our initial inquiry must be with reference to the quitclaim deed of December 22, 1928. If it was legally delivered and was a valid conveyance of the property in controversy, then there would be no occasion to consider the alleged liability of the defendants as trustees.

Supplementing this factual picture as to what has been said heretofore, the record discloses the following facts:

The quitclaim deed was recorded on August 11, 1947, two months subsequent to the death of David, Sr.; it was recorded by David, Jr.; and David, Sr., upon qualifying as executor and trustee of Milton's will, filed an inventory which listed the property in question as part of the estate of his brother. This estate was closed in July, 1934. In 1938, David, Sr., made a payment of $500 to Benjamin G., purporting to be one half of the net income of the trust, and continued to make payments thereafter until 1944, aggregating $2750, after which no payments were made.

The evidence relating to the delivery of the deed of December 22, 1928, and the subsequent acts of David, Sr., of David, Jr., and of Frieda are substantially as follows: Milton L. lived with David, Sr., and Frieda, and during his later years suffered and died of the effects of a cancer. There is nothing in the record to show that David, Sr., ever assumed possession of the real estate in question during the lifetime of Milton L., nor is there any proof he ever saw or had possession of the deed until after the death of Milton.

Frieda was called as an adverse witness, and her testimony is most confusing as to the execution of the deed. She does not claim to know anything about the deed other than that she found it in the closet when they moved, or, as she said at another time, in a safety box in the bank. She never attempted at any time to place the deed upon record, although she was a cograntee; and her testimony indicates that she was referring to a deed that she once had to sign herself.

The deed was unrecorded for nineteen years, and for the same period the tax books remained unchanged, the property in question still being charged to Milton L. Laudau. The evidence conclusively shows that David, Sr., never treated the property in question as his own, but as real estate embraced in the trust created by his brother's will. Significant and completely consistent with this theory is

the undisputed fact that he paid out $2750 to the beneficiaries under this trust. We are of the opinion that the master and chancellor were clearly right in their determination that the quitclaim deed of December 22, 1928, was never effectually delivered and was without force and validity.

The master saw and heard these witnesses. The findings in this respect are supported by substantial evidence and sustained by the court. We are not inclined to overrule a finding of fact upon a controverted question which is so abundantly sustained by the evidence.

Having disposed of the question pertaining to the delivery of the deed in this fashion, it becomes necessary for us to consider the propriety of the court's decree with reference to the accounting by the trustee. The master in chancery and the chancellor entertained different views on this subject.

Throughout the incumbency of David, Sr., as trustee, it was his responsibility, and his alone, that the trust estate be properly administered. No valid argument is advanced that would indicate any liability on the part of David, Jr., for any defalcation, mismanagement, or breach of trust on the part of his father. David, Jr., did not acquire his interest in the trust property as heir or devisee of David, Sr., but as the contingent remainderman following the life estate of his father under a devise from Milton L. Hence, he cannot become liable for the debts or defalcations of his father as trustee, unless he receives some property from his father which could have been subject to his father's debts, and there is nothing in the record that shows such fact. As a matter of law, David, Jr., could have properly pleaded *rien per descent* had the cause of action been predicated upon such a basis. An heir at common law is not liable for the debts of his ancestor. (*Monroe* v. *Becker*, 283 Ill. 42.) And his liability for receiving assets of his ancestor is embraced entirely in sections 11, 12, 13, 14

and 15 of the Statute of Frauds. Ill. Rev. Stat. 1949, chap. 59, pars. 11-15; *People* v. *Brooks,* 123 Ill. 246.

It is not necessary to recite the provisions of these different sections of the Statute of Frauds, since there is no contention made in the case that David, Jr., is required to account for anything he received by devise or descent from David, Sr. The only evidence that David, Jr., received assets from the estate of his father is based entirely upon the validity of the deed of December 22, 1928, which, if it were held valid and effective, would have destroyed all claims of the plaintiffs to accounting. It is our conclusion, therefore, that the decree of the superior court was erroneous in holding David, Jr., liable for any failure to account for rents and profits from said trust property.

The legal situation is quite similar with reference to appellant Frieda Bremler Landau. She was the wife of David, Sr., and was not a trustee until after the death of David, Sr. It is the uniform rule that a successor trustee is not liable for the actions or defaults of the predecessor trustee, unless such successor trustee participates in the conversion of the property from the uses designated in the trust. (*Piff* v. *Berresheim,* 405 Ill. 617.) Therefore, Frieda could not be held liable for an accounting until after the death of David, Sr.

The court made the same error in holding Frieda, as well as David, Jr., liable for an accounting from the date of the death of Milton L. on February 28, 1930. As a matter of law, since the deed of December 22, 1928, was invalid, she has no interest in the property except as trustee, for she was not an heir of Milton L. The title to one half of the trust, passing by virtue of the will, goes directly to David, Jr., as remainderman after the death of his father. Upon the death of David, Sr., trustee, the beneficial use of the residuum, which was the *corpus* of the trust, vested one half in David, Jr., free of the trust, as his property in fee, and the other one-half remained in the

trust, from which plaintiff Benjamin G. was entitled to receive the income, and plaintiff Edith Landau Uitti the remainder in fee upon the death of Benjamin G., in case she survived him. It then became the duty of the new trustee to turn over one half of the income to Benjamin G. as the beneficiary.

The court based the liability of David, Jr., after the death of David, Sr., upon the theory that David, Jr., was the agent of Frieda, the successor trustee. This theory runs counter to the well-settled principle of law that an agent is not liable for the acts of a disclosed principal, unless he takes some active part in violating some duty the principal owes to a third person. (*Chicago Title and Trust Co.* v. *DeLasaux,* 336 Ill. 522; Restatement of the Law of Agency, sec. 320.) We find nothing in the evidence, in the master's report, or in the decree that would make David, Jr., as agent, liable for the acts of Frieda, as principal. As far as Frieda is concerned, she appears to be the successor trustee, and, since she became such, has joined in a deed of conveyance to third parties, as well as collected the rents from all of the property, and presumptively is liable in some manner to the plaintiff Benjamin G., for rents and profits, and ultimately to Edith Landau Uitti for the remainder in fee, in case she survives Benjamin G., her father.

Before the question of liability of Frieda is absolutely fixed by the court, provision should be made for ascertaining the liability for the improper conveying of the one-half interest in the property as against the contingent interest of Edith Landau Uitti, and of course that is contingent in turn upon the legality of the appointment of Frieda as successor trustee, and the rights of the other defendants whose interests are deferred for further consideration by the trial court.

The question of credits for payment of taxes and other legitimate expenses of the trustee should be further con-

sidered by the court. None of these expenses were allowed by the court, apparently because no books of account were produced. The fact the defendants claimed the fee under the deed of December 22, 1928, would have justified this course had it been held valid. In restating the account, credit should be given the trustee for all proper amounts of expenses shown upon a further hearing of this cause.

The issues in the case are presented to this court in a most unusual and fragmentary manner. This court should not be called upon to decide issues in installments. There are four appellees, Christ Steffanopoulos, Angeline Tellerino, William Horn and Theresa Horn, who claim to be *bona fide* third-party purchasers from Latimer, and that, irrespective of the validity of the 1928 quitclaim deed, they have rights under their conveyance that should be protected. This branch of the case was not considered by the lower court. This issue must be decided at a further hearing of this cause. Benjamin G. Laudau is entitled to an accounting. The extent to which Frieda, as successor trustee, may be liable for her failure to account and for her unauthorized conveyance of the property in question to Ira Latimer is to be ascertained. The validity of the appointment of Frieda as successor trustee appears to be a question not disposed of by the lower court. This cause is remanded for the purpose of resolving all the foregoing issues and whatever new ones may arise, to the end that all rights of all parties involved in the controversy may be determined. The decree entered shall not be inconsistent with the views we have expressed with respect to the invalidity of the quitclaim deed of 1928 and the error of the trial court in assessing damages against David, Jr., and Frieda, as trustee.

*Affirmed in part and reversed in part, and remanded.*