2021 IL App (1st) 210176

No. 1-21-0176

Opinion filed December 7, 2021

SECOND DIVISION

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| HARRY CHANNON and DAWN CHANNON, Individually and on Behalf of All Others Similarly Situated, | ) ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiffs-Appellees, | ) ) ) | No. 19-CH-4869 |
| v. | ) ) | The Honorable |
| WESTWARD MANAGEMENT, INC., an Illinois corporation, | ) ) ) | Anna M. Loftus, Judge Presiding. |
| Defendant-Appellant. | ) | |

_____

PRESIDING JUSTICE FITZGERALD SMITH delivered the judgment of the court, with opinion.
Justices Lavin and Cobbs concurred in the judgment and opinion.

**OPINION**

¶ 1     The plaintiffs, Harry Channon and Dawn Channon, have filed a class action complaint against

the defendant, Westward Management, Inc., the property management agent retained by the board

of managers of the condominium unit owners' association for the building in which the plaintiffs

formerly owned a condominium unit. The plaintiffs allege that, when they sold their condominium

unit in 2016, the defendant charged excessive and unreasonable fees to provide them with the

documents and other information that the plaintiffs were required to provide to the prospective

purchasers of their unit in connection with the sale. Relevant to this appeal, the plaintiffs allege that the defendant's actions violated section 22.1 of the Condominium Property Act. 765 ILCS 605/22.1 (West 2016). The trial court denied the defendant's motion to dismiss the complaint but certified a question of law to this court, which we allowed. The certified question asks whether section 22.1 of the Condominium Property Act (*id.*) provides an implied cause of action in favor of a condominium unit seller against a property manager, as agent of a condominium association or board of directors, based on allegations that the property manager charged excessive fees for the production of information required to be disclosed to a prospective buyer under that statute. For the following reasons, we hold that such an implied cause of action exists under the statute.

¶ 2                                I. BACKGROUND

¶ 3        When the owner of a condominium unit (other than the developer) sells that unit, section 22.1 of the Condominium Property Act requires the owner to obtain from the board of managers of the condominium unit owners' association—and make available to the prospective purchaser—nine categories of documents and information concerning the condominium and its unit owners' association. *Id.* Generally speaking, these items include governance documents of the unit owners' association, as well as statements concerning any liens, anticipated capital expenditures, the status and amount of funds held in reserve and any portion earmarked for specific projects, the association's financial condition, the status of any pending lawsuits or judgments in which the association is a party, the insurance coverage provided for unit owners, the compliance with condominium instruments of the prior unit owner's improvements or alterations, and the identity and mailing address of the association's principal officer or the other officer or agent designated to receive notices. *Id.* § 22.1(a)(1)-(9). Section 22.1(b) requires "[t]he principal officer of the unit owner's association or such other officer as is specifically designated" to furnish this information

within 30 days of a request. *Id.* § 22.1(b). Section 22.1(c) provides in pertinent part that "[a] reasonable fee covering the direct out-of-pocket cost of providing such information and copying may be charged by the association or its Board of Managers to the unit seller for providing such information." *Id.* § 22.1(c).

¶ 4        The plaintiffs' class action complaint alleges that the defendant violated section 22.1(c) by charging more than a "reasonable fee covering the direct out-of-pocket cost" of providing the plaintiffs with the information that they were required under section 22.1(a) to obtain and provide to the prospective purchasers when selling their condominium unit. The plaintiffs allege that, in February 2016, they decided to sell the unit that they owned in a condominium property located on North Kenmore Avenue in Chicago. They entered into a contract with prospective purchasers, which was a standard form contract requiring the plaintiffs to obtain and provide the prospective purchasers with the various documents and information set forth in section 22.1(a). The defendant was the management agent retained by the board of managers of the Kenmore Club Condominium Association (Kenmore Club Board or Kenmore Club Association, respectively), which is the unit owners' association for the building in which plaintiffs owned their condominium unit.

¶ 5        Among the duties designated to the defendant as management agent was the duty to provide a selling unit owner with the documents and information required by section 22.1(a). Knowing that the defendant had been assigned this duty by the Kenmore Club Association, the plaintiffs notified the defendant of their intent to sell their unit. The defendant provided them with a standard form with which to request documents. The form listed various categories of documents, along with a price next to each category of document. The plaintiffs submitted the form to the defendant, requesting to be provided with (1) a paid-assessment letter at a cost of $150.00, (2) a year-to-date income statement and budget at a cost of $20.00, (3) a "Condo Questionnaire/Disclosure

Statement/22.1 (each)" at a cost of $75.00, and (4) insurance contact information at a cost of $0.00. The plaintiffs also submitted a form authorizing the defendant to charge their credit card in the amount of $245.00 for providing these documents. The defendant then provided the requested documents, and the plaintiffs' credit card was charged $245.00. The plaintiffs allege that the $245.00 fee charged by the defendant for providing the documents required by section 22.1(a) is not a "reasonable fee covering the direct out-of-pocket cost of providing such information," as required by section 22.1(c). See *id.* Instead, they allege, it is an "excessive and unreasonable fee" that does not reflect the defendant's direct out-of-pocket costs for providing this information. They allege that they cannot reasonably obtain the documents and information necessary to sell their unit from any source other than the defendant, and thus they were "beholden" to the defendant and had no choice but to pay the excessive and unreasonable fee it requested to receive the documents. They allege that the defendant's actions violate section 22.1 of the Condominium Property Act (*id.* § 22.1), as well as the Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/1 *et seq.* (West 2016)).

¶ 6        The defendant filed a motion to dismiss the plaintiffs' complaint. It argued that no implied private right of action existed in favor of a condominium seller under section 22.1 because the purpose of that statute is to protect prospective purchasers of condominium units, not unit sellers. It also argued that section 22.1(c) did not govern the fees that property management companies providing services to condominiums could charge, as its unambiguous language mentions only what condominium associations or their boards of managers may charge for providing information. Finally, it argued that the plaintiffs had failed to plead a cause of action in second count under the Consumer Fraud Act.

¶ 7        In a written order, the trial court denied the defendant's motion to dismiss and determined

that an implied cause of action existed in favor of condominium sellers under section 22.1. In doing so, it noted that prior case law had recognized an implied cause of action under the statute in favor of buyers (see *Nikolopulos v. Balourdos*, 245 Ill. App. 3d 71, 77 (1993); *D'Attomo v. Baumbeck*, 2015 IL App (2d) 140865, ¶ 39), but that neither of those cases had addressed the question of whether an implied cause of action could also exist in favor of sellers. It next considered the purpose of the Condominium Property Act (765 ILCS 605/1 *et seq.* (West 2016)) and of section 22.1 specifically. It noted that the Condominium Property Act contained protections for both buyers and sellers alike, as "[t]oday's buyer becomes tomorrow's seller." It found that section 22.1 reflected this reality by imposing "substantial obligations on sellers to secure the provision of certain documents from management, but in turn offers them a shred of protection against price-gouging." It also noted that a condominium seller was by definition a unit owner and that other implied statutory causes of action had been recognized in favor of unit owners, citing *Boucher v. 111 East Chestnut Condominium Ass'n*, 2018 IL App (1st) 162233, ¶¶ 20-21 (majority recognized cause of action in favor of unit owner against owners' association under section 18.4(h) of the Condominium Property Act (765 ILCS 605/18.4(h) (West 2012)) for violating owner's free speech rights). Based on its determination that condominium sellers were within the class of persons that section 22.1 was designed to protect, the trial court concluded that implying a cause of action against the imposition of unreasonable fees would be consistent with the statute's purposes, that the charging of an unreasonable fee was the type of injury that section 22.1(c) was designed to prevent, and that establishing a cause of action is the only method to enforce the statutory requirement.

¶ 8       Next, the trial court rejected the reasoning of *Horist v. Sudler & Co.*, 941 F.3d 274, 279-80 (7th Cir. 2019), in which the federal court of appeals, relying on *Nikolopulos* and *D'Attomi*,

concluded that the purpose of section 22.1 is for the protection of purchasers only and therefore held that no implied cause of action exists in favor of sellers under the statute. The trial court reasoned that the court of appeals had read *Nikolopulos* and *D'Attomi* too narrowly as "permitting no other purpose to be read into the statute" than protecting purchasers, whereas the trial court had concluded that section 22.1 was intended to protect sellers as well as purchasers. The trial court further reasoned that the decision of the court of appeals was likely based on the hesitancy of federal courts to recognize "novel state law claims," which the trial court reasoned that this was.

¶ 9        Finally, the trial court addressed whether a seller's implied cause of action for charging unreasonable fees could be brought against a property manager acting as agent for a condominium unit owners' association or its board of managers in providing documents and information to sellers under section 22.1. The trial court noted that it had been thoroughly alleged in the complaint that the defendant was acting as the agent of the unit owners' association, that it had been delegated and had taken on the association's statutory duty of providing the requisite documents, and that the defendant was the only source from which the plaintiffs could have obtained these documents. Citing and quoting *Landau v. Landau*, 409 Ill. 556, 564 (1951), the trial court recognized that an agent may be held liable for breaching a duty owed by a principal where the agent " 'takes some active part in violating some duty the principal owes to a third person.' " The trial court reasoned that the plaintiffs' allegations fell squarely within this rule, because, to whatever extent the duty not to charge unreasonable fees was placed on the association, the defendant was the one charging the fees and was the only party that could fulfill the statutory duty of providing the documents. Additionally, the trial court denied the motion to dismiss the count under the Consumer Fraud Act.

¶ 10       The defendant then filed a motion under Illinois Supreme Court Rule 308 (eff. Oct. 1, 2019), seeking to have the trial court certify the question of law to this court of whether section 22.1

provides an implied cause of action in favor of a condominium seller against a property manager based on allegations that the property manager charged excessive fees for producing documents and information. The plaintiffs objected to this, arguing that it would be premature because issues of fact existed on the question of the agency relationship between the defendant and the board of managers or unit owners' association of the plaintiffs' condominium building, and this court had declined to answer a similar certified question on a previous occasion due to the issues of fact surrounding the question of agency. See *Friedman v. Lieberman Management Services, Inc.*, 2019 IL App (1st) 180059-U. In reply, the defendant asserted that in this case "agency has been established," at least for purposes of the certified question. The trial court agreed but modified the defendant's proposed certified question "to explicitly identify the agency relationship." This court then allowed the defendant's application for leave to appeal.

¶ 11                              II. ANALYSIS

¶ 12       The certified question is whether section 22.1 of the Condominium Property Act (765 ILCS 605/22.1 (West 2016)) provides an implied cause of action in favor of a condominium unit seller against a property manager, as agent of a condominium association or board of directors, based on allegations that the property manager charged excessive fees for the production of information required to be disclosed to a prospective buyer under that statute. We first address whether an implied right of action exists under the statute at all before considering the question of agency.

¶ 13       Determining whether an implied cause of action exists under a statute involves an application of the principles of statutory interpretation. *First Capital Mortgage Corp. v. Union Federal Bank of Indianapolis*, 374 Ill. App. 3d 739, 741 (2007). It is a question of law subject to *de novo* review. *Metzger v. DaRosa*, 209 Ill. 2d 30, 34 (2004). A court's primary objective when presented with any issue requiring statutory interpretation is to ascertain and give effect to the intent of the

legislature. *Oak Lawn Professional Firefighters Ass'n, Local 3405 v. Village of Oak Lawn*, 2018 IL App (1st) 172079, ¶ 18. The court looks first to the plain language of the statute as the best indication of legislative intent. *LaSalle Bank National Ass'n v. Cypress Creek 1, LP*, 242 Ill. 2d 231, 237 (2011). The language of the whole statute is evaluated, with words and phrases considered in context to other relevant statutory provisions and not in isolation. *Oak Lawn Professional Firefighters Ass'n*, 2018 IL App (1st) 172079, ¶ 18. A court may also consider the purpose behind the law, the evils that the legislature was seeking to remedy, and the consequences that would result from interpreting the law one way or the other. *Rivera v. Commonwealth Edison Co.*, 2019 IL App (1st) 182676, ¶ 25. Where the statutory language is plain, ordinary, and unambiguous, it will be enforced as written without resort to other tools of statutory interpretation. *Stinson v. Chicago Board of Election Commissioners*, 407 Ill. App. 3d 874, 876 (2011).

¶ 14    Section 22.1 of the Condominium Property Act provides in its entirety as follows:

"(a) In the event of any resale of a condominium unit by a unit owner other than the developer such owner shall obtain from the Board of Managers and shall make available for inspection to the prospective purchaser, upon demand, the following:

(1) A copy of the Declaration, by-laws, other condominium instruments and any rules and regulations.

(2) A statement of any liens, including a statement of the account of the unit setting forth the amounts of unpaid assessments and other charges due and owing as authorized and limited by the provisions of Section 9 of this Act or the condominium instruments.

(3) A statement of any capital expenditures anticipated by the unit owner's association within the current or succeeding two fiscal years.

(4) A statement of the status and amount of any reserve for replacement fund and any portion of such fund earmarked for any specified project by the Board of Managers.

(5) A copy of the statement of financial condition of the unit owner's association for the last fiscal year for which such statement is available.

(6) A statement of the status of any pending suits or judgments in which the unit owner's association is a party.

(7) A statement setting forth what insurance coverage is provided for all unit owners by the unit owner's association.

(8) A statement that any improvements or alterations made to the unit, or the limited common elements assigned thereto, by the prior unit owner are in good faith believed to be in compliance with the condominium instruments.

(9) The identity and mailing address of the principal officer of the unit owner's association or of the other officer or agent as is specifically designated to receive notices.

(b) The principal officer of the unit owner's association or such other officer as is specifically designated shall furnish the above information when requested to do so in writing and within 30 days of the request.

(c) Within 15 days of the recording of a mortgage or trust deed against a unit ownership given by the owner of that unit to secure a debt, the owner shall inform the Board of Managers of the unit owner's association of the identity of the lender together with a mailing address at which the lender can receive notices from the association. If a unit owner fails or refuses to inform the Board as required under subsection (c) then that

unit owner shall be liable to the association for all costs, expenses and reasonable attorneys fees and such other damages, if any, incurred by the association as a result of such failure or refusal.

A reasonable fee covering the direct out-of-pocket cost of providing such information and copying may be charged by the association or its Board of Managers to the unit seller for providing such information." 765 ILCS 605/22.1 (West 2016).

¶ 15    It is undisputed that no express cause of action exists under this statute. However, the absence of statutory language expressly granting such a right is not dispositive because a court may determine that a private right of action is implied in a statute. *Metzger*, 209 Ill. 2d at 35. Implication of a private right of action is appropriate if four factors are satisfied: (1) the plaintiffs are members of the class for whose benefit the statute was enacted, (2) the plaintiffs' injury is one the statute was designed to prevent, (3) a private right of action is consistent with the underlying purpose of the statute, and (4) implying a private right of action is necessary to provide an adequate remedy for violations of the statute. *Id.* at 36.

¶ 16    The defendant's principal argument on appeal is that no cause of action may be implied in favor of the plaintiffs in this case because, as sellers of a condominium unit, they are not members of the class for whose benefit section 22.1 was enacted. The defendant contends that section 22.1 imposes only obligations on unit sellers and does not provide sellers with any protections or benefits. Rather, all protections and benefits provided by the statute are conferred on prospective purchasers, by ensuring that they are provided in a timely manner with the documents and information necessary to make an informed decision about whether to purchase a unit within a condominium property. The defendant argues that even subsection 22.1(c) has the purpose of benefitting purchasers, not sellers, because the information obtained under section 22.1 helps them

by enabling them to decide whether a condominium property is financially stable and has acceptable governing documents. The defendant asserts that subsection 22.1(c) also "lets associations recoup expenses incurred by them in helping sellers satisfy their obligations to potential buyers" and that the " 'reasonable fee' language prevents sellers from getting away cheap." The defendant disputes the trial court's characterization of subsection 22.1(c) as providing sellers with "a shred of protection against price-gouging," arguing that such protection is merely "tangential" to the statute's overall intended purpose of benefitting prospective buyers.

¶ 17    The defendant also relies upon the various cases that have recognized that the purpose of section 22.1 is to protect potential purchasers of units within condominiums by providing them with important information needed to make an informed purchase. Indeed, multiple cases have held that section 22.1 was designed to protect prospective purchasers of condominium units. In *Nikolopulos*, 245 Ill. App. 3d at 77, this court described the statute as being "designed to prevent prospective purchasers from buying a unit without being fully informed and satisfied with the financial stability of the condominium as well as the management, rules and regulations which affect the unit he is seeking to purchase." The court thus recognized that an implied right of action existed in favor of a prospective purchaser to terminate a contract to purchase a unit within a reasonable time after being furnished with the required documents and information showing previously undisclosed material expenses or conditions. *Id.* In *Mikulecky v. Bart*, 355 Ill. App. 3d 1006, 1012-13 (2004), this court again quoted the above statement of the statute's purpose from *Nikolopulos* before holding that issues of fact precluded summary judgment in favor of a seller of a condominium unit, where the unit's purchaser alleged that the seller had violated section 22.1 by failing to disclose an anticipated capital expenditure for an expensive window-replacement project at the property of which the seller had reason to know. Finally, in *D'Attomo*, 2015 IL App (2d)

140865, ¶ 39, the court extended the holding of *Nikolopulos* to recognize an implied private right of action in favor of a purchaser post-closing, where the unit seller was alleged to have concealed documents requested under the statute, the purchaser did not discover the concealment until after the closing, and the nondisclosed information materially affected the purchaser's rights in the unit.

¶ 18    In *Horist*, 941 F.3d at 276-77, the court of appeals was faced with a case similar to the one before us—namely, a proposed class action by condominium unit owners alleging that a property management company and its third-party vendor that compiled electronically-downloadable disclosure documents had violated section 22.1(c) by charging the plaintiffs excessive fees to provide those documents in connection with sales of condominium units. Among the issues before the court was whether the plaintiffs, as sellers of condominium units, had a right of action to enforce section 22.1. *Id.* at 278. After reviewing *Nikolopulos* and *D'Attomo*, the court of appeals reasoned that the "unmistakable takeaway from these two decisions is that section 22.1 is designed to protect the interests of condominium *purchasers*, not condominium *sellers.*" (Emphases in original). *Id.* at 279. "As owner/sellers they are not within the class of persons the statute was designed to protect, nor have they suffered an injury that the statute was designed to prevent." *Id.* The court held that it was not persuaded that the statutory provision for a reasonable fee in section 22.1(c) meant that unit sellers were within the class of persons the statute was designed to protect. *Id.* at 279-80. It reasoned that neither *Nikolopulos* nor *D'Attomo* had distinguished the statute's subsections, but rather had discussed only " '[t]he disclosure requirements imposed by [section] 22.1.' " *Id.* at 280 (quoting *D'Attomo*, 2015 IL App (2d) 140865, ¶ 34). The court also relied on the principle of statutory interpretation that statutes are read as a whole without focusing on isolated subsections, reasoning:

    "Reading section 22.1 in this holistic way, subsection (a) of the statute establishes the

seller's duty to disclose an array of important documents to the buyer; subsection (b) requires condominium associations to furnish the required documents to unit owners within 30 days of a written request; and subsection (c) allows associations to charge a reasonable fee for doing so. The statute works as an integrated whole for the benefit of prospective condominium *purchasers*, not *sellers*." (Emphases in original). *Id.*

The court went on to reason that subsections (b) and (c) implement the duty of disclosure of subsection (a) and were not "independent entitlements for the benefit of condominium associations and unit sellers." *Id.*

¶ 19　　　　In addition to *Horist*, the defendants draw our attention to two other federal district court cases decided prior to *Horist*, both of which again involved claims similar to those of this case. In *Ahrendt v. Condocerts.com, Inc.*, No. 17-cv-8418, 2018 WL 2193140, at *2 (N.D. Ill. May 14, 2018), the district court rejected the plaintiff's claim based on the absence of any authority that a private right of action existed in favor of condominium sellers or that the legislature intended to protect sellers from excessive charges. In *Murphy v. Foster Premier, Inc.*, No. 17-cv-8114, 2018 WL 3428084, at *3 (N.D. Ill. July 16, 2018), the district court reasoned that the plaintiffs, as condominium unit owners and sellers, fell within the class for whose benefit the statute was enacted. However, the district court went on to reason that the goal of the statute was to increase disclosure, and thus the plaintiffs' injury of paying excessive charges was not the one the statute was designed to prevent. *Id.* The court further reasoned that the plaintiffs had alternative remedies available, such as suing their owners' association or passing the cost onto the purchasers who benefited from the sellers' prompt disclosures. *Id.* While we may consider the federal district court and court of appeals decisions interpreting state law for their persuasive value, it is well settled that federal decisions are not binding on Illinois state courts. *Trilisky v. City of Chicago*, 2019 IL

App (1st) 182189, ¶ 43 n.5.

¶ 20    Finally, the defendant discusses the trial court's reliance on the transcripts of the legislative debates involving the Condominium Property Act cited by the plaintiffs and argue that other portions of those transcripts support the purpose of section 22.1 as being for the protection of purchasers. We note that we have reviewed the transcripts of the legislative debates that are contained in the supporting record, which are from 1972 and 1983. These debates do not appear to involve the enactment of section 22.1, which occurred in 1979. See Pub. Act 81-897 (eff. Jan. 1, 1980) (adding 765 ILCS 605/22.1). A fundamental rule of statutory interpretation is that we interpret statutes as they were intended to be interpreted at the time they were passed. *Grauer v. Clare Oaks*, 2019 IL App (1st) 180835, ¶ 157 (citing *O'Casek v. Children's Home & Aid Society of Illinois*, 229 Ill. 2d 421, 441 (2008)). We find these debates to be of little assistance in resolving the question before us.

¶ 21    Nevertheless, we find that the plain language of section 22.1 requires us to reject the defendant's argument that its purpose is only for the benefit or protection of potential purchasers of condominium units. Although that may be the statute's primary purpose, it is clear from the plain language of this statute that it also has the purpose of benefiting condominium unit owners who wish to sell their units. Most of the information required by section 22.1(a) concerns the financial status of the property's unit owners' association and anticipated capital expenditures involving the condominium property as a whole. Most of it is information that is not within the knowledge or possession of an individual unit owner. Regardless, it is information that any prospective purchaser would insist upon receiving to be "fully informed and satisfied with the financial stability of the condominium as well as the management, rules and regulations which affect the unit he is seeking to purchase." See *Nikolopulos*, 245 Ill. App. 3d at 77. Thus, a unit

owner who wants to sell his or her unit would be significantly hindered in doing so if he or she has no legal method to acquire this information from the party in possession of it to provide to a potential buyer to assuage that buyer's concerns about buying a unit within a particular condominium property or association. It goes without saying that there are many unknowns in buying a unit within a condominium property. Many condominium properties have owners' associations that are in strong financial condition and buildings that are not in need of major improvements. But other properties are not in such a good position, and most potential purchasers would be hesitant to buy into a condominium property without receiving some information on these matters in advance. Thus, a seller without a mechanism to obtain this information from an association to disclose it to a buyer is likely to encounter difficulty finding a purchaser willing to buy the seller's unit. Section 22.1 thus protects unit owners who want to sell their condominium units by ensuring that they have a statutory mechanism to obtain this information from an association to provide in connection with a sale. It protects unit owners who could otherwise be locked into the purchase of a condominium unit, unable to sell it. The statute thus facilitates sales, just as it protects purchasers.

¶ 22       The statute also protects unit owners wishing to sell (as well as owners' associations and their boards of managers) by specifying what may be charged for providing the selling unit owner with the information required under section 22.1. Without the last sentence of section 22.1(c), it is not difficult to imagine how disputes could arise between a unit seller and an owners' association or board of managers about whether and how much the unit seller could be charged to receive this information. Much of the information required by section 22.1(a) requires a certain amount of time or expense to accurately compile, but in many cases the person compiling it will hold a voluntary, nonremunerative position on a condominium association board of managers. Thus, the association

or board might insist on charging a fee that compensates those compiling the information for their time and for reimbursement for expenses in doing so, whereas a unit seller might dispute the amount of the charge or insist that he or she is entitled to receive the information without charge. Thus, the final sentence of section 22.1(c) prevents such disputes and protects all parties in the process by (1) specifying that copying and providing documents or information is something for which the association or its board of managers may charge the unit seller and (2) providing general parameters of what the amount of that charge may be. The fact that the General Assembly chose to specify that only a direct out-of-pocket charge would be considered reasonable is especially indicative of a legislative intent to protect unit sellers needing to obtain this information.

¶ 23      Having concluded that the plaintiffs, as sellers of a condominium unit, are members of the class for whose benefit section 22.1 was enacted, we next consider whether the injury alleged by the plaintiffs is one that section 22.1 was designed to prevent. See *Metzger*, 209 Ill. 2d at 36. Here, the injury alleged by the plaintiffs' class action complaint is that the defendant charged them an "excessive and unreasonable fee" of $245.00 for providing the documents required by section 22.1(a), which did not reflect the defendant's direct out-of-pocket costs for providing that information. Section 22.1(c) states, "A reasonable fee covering the direct out-of-pocket cost of providing such information and copying may be charged by the association or its Board of Managers to the unit seller for providing such information." 765 ILCS 605/22.1(c) (West 2016). Setting aside for a moment the question of whether this section controls what an entity acting as agent of an association or board of managers may charge, we hold that the plaintiffs' alleged injury of being charged an excessive fee to receive documents and information required by section 22.1 is an injury that the statute was designed to prevent.

¶ 24      Our third consideration is whether a private right of action is consistent with the underlying

purpose of section 22.1. See *Metzger*, 209 Ill. 2d at 36. As discussed above, we find that the purpose of section 22.1 is both for the protection of prospective purchasers and to ensure that condominium owners wishing to sell their units have a legal mechanism to obtain information about the financial status of the owners' association and the condition of the condominium property as a whole necessary to assuage the concerns of a potential purchaser about buying a unit within a condominium property. It also protects unit sellers by specifying that the fee they may be charged to receive this information is a reasonable fee covering the direct out-of-pocket cost of providing such information and copying. Again, setting aside for a moment the issue of agency, we find that implying a private right of action in favor of unit sellers charged fees in excess of this amount to receive the documents and information they need to provide to buyers in connection of the sale of their condominium units is consistent with these statutory purposes.

¶ 25        Finally, we consider whether implying a private right of action is necessary to provide an adequate remedy for violations of the statute. *Id.* A private right of action is implied " 'only in cases where the statute would be ineffective, as a practical matter, unless such an action were implied.' " *Id.* at 39 (quoting *Fisher v. Lexington Health Care, Inc.*, 188 Ill. 2d 455, 464 (1999)). Here, section 22.1 provides for no penalty or other enforcement mechanism for the charging of an excessive or unreasonable fee for documents or information. Without an implied private right of action in favor of a seller, the statutory prohibition on the charging of an excessive fee would be ineffective.

¶ 26        The defendant argues that implying a private right of action under section 22.1 of the Condominium Property Act is unnecessary because the Consumer Fraud Act (815 ILCS 505/1 *et seq.* (West 2016)) "provides a cause of action against a property manager for unfairly charging for documents." The defendant points out that the plaintiffs' count under the Consumer Fraud Act

remains pending in the trial court. We note, however, that the defendant took the contrary position in the trial court, arguing in its motion to dismiss that the misconduct alleged by the plaintiffs is not the type of conduct that falls within the purview of the Consumer Fraud Act. The trial court rejected this argument, but the issue is not before us on the certified question. The issue is also not adequately briefed to allow us to resolve it, and we decline to address the sufficiency of the consumer fraud count in the absence of briefing by the parties. The defendant's cursory assertion that the Consumer Fraud Act provides an adequate cause of action for relief is insufficient to allow us to conclude that it is unnecessary to imply a private right of action for violations of section 22.1.

¶ 27     For these reasons, we hold that the necessary elements are satisfied to imply a private right of action in favor of a condominium unit seller charged an excessive or unreasonable fee to receive the documents or information required by section 22.1 of the Condominium Property Act. 765 ILCS 605/22.1 (West 2016). In doing so, we disagree with the analysis of *Horist*, 941 F.3d at 279-80, and other federal cases discussed above and conclude that they interpreted the purpose of section 22.1 too narrowly. Neither *Nikolopulos* nor *D'Attomo* held that the section 22.1 had the exclusive purpose of protecting purchasers of condominium units and had no purpose of providing protection to sellers. Whether the statute also protected sellers was simply not the question before the courts in those cases.

¶ 28     We now turn to the question of agency and consider whether a unit seller's implied right of action exists only against a unit owners' association or board of managers, or whether it also exists against a property manager that acts as agent for that association or board. The plain language of section 22.1 contains no mention of agents acting on behalf of unit owners' associations or their boards of managers. Instead, section 22.1(a) provides that a unit owner shall obtain the requisite documents and information "from the Board of Managers." 765 ILCS 605/22.1(a) (West 2016).

Section 22.1(b) provides that "[t]he principal officer of the unit owner's association or such other officer as is specifically designated shall furnish the above information." *Id.* § 22.1(b). And section 22.1(c) provides that a reasonable fee "may be charged by the association or its Board of Managers to the unit seller for providing such information." *Id.* § 22.1(c). However, the Condominium Property Act separately grants the board of managers of a condominium association the ability to "engage the services of a manager or managing agent." *Id.* § 18(a)(5).

¶ 29    It is undisputed for purpose of appeal that the defendant was acting as agent of the Kenmore Club Association in providing the documents and information required by section 22.1 to the plaintiffs and in charging them for doing so. The trial court, in concluding that the defendant could be held liable as the association's agent for allegedly charging excessive fees in violation of section 22.1(c), found that, on the allegations, the defendant "took on the Section 22.1 duty" owed by the association to the plaintiffs when it accepted the Kenmore Club Association's delegation of every aspect of its duties under section 22.1. The trial court cited and quoted *Landau*, 409 Ill. at 564, for the principle that an agent may be held liable for the breach of a duty owed by a principal where the agent " 'takes some active part in violating some duty the principal owes to a third person.' " The trial court reasoned that the plaintiffs' allegations fit squarely within this rule, that "to whatever extent the duty to not charge unreasonable fees remains on Kenmore Club's shoulders, Defendant is the one charging the fees—and, on the allegations, Defendant is the *only* party who can assemble or otherwise provide the document[s]." (Emphasis in original).

¶ 30    We agree with the trial court's reasoning. Although section 22.1 itself does not specifically mention that the statutory duties of a condominium unit owners' association may be performed by its managing agent, we see no reason why this would not be one of the "services" for which an association's board of managers may engage a managing agent under section 18(a)(5). 765 ILCS

605/18(a)(5) (West 2016). While the defendant correctly points out that only a few sections of the Condominium Property Act mention managing agents or property managers and that none involve the issue here, this shows a legislative intent not to delineate the specific services that an agent or property manager can and cannot provide to condominium associations. The fact that the Kenmore Club Association delegated the performance of its duty under section 22.1 to the defendant and that the defendant agreed to accept it supports the conclusion that this is a service that a property manager may provide as agent to a condominium association.

¶ 31 Where a property manager, as part of the services for which it is engaged as an agent by a condominium association, is delegated and agrees to perform the duties of an association or board of managers under section 22.1, it cannot be delegated or agree to perform those duties as agent in a way that the association or board would be prohibited from doing as principal. An agent's power is inherently limited by the power of the principal to act on its own behalf, since the capacity to do a legally consequential act by means of an agent is coextensive with the principal's capacity to do the act itself. 2A C.J.S. *Agency* § 161 (2021). This includes a property manager's charging, as agent, a fee to unit sellers that the association or board of managers would be statutorily prohibited from charging, as principal, for performing the same duty itself. After all, the property manager is acting as the association's agent both for purposes of producing the documents and information and in charging the fee. If a property manager used its status as agent to collect a fee from sellers greater than that allowed by the statute and then remitted that fee to the association or board, it would be taking an active part in violating a statutory duty owed by the principal; its defense to liability in that instance would be that the principal had received the money. But, if the property manager charged a unit seller the exact same fee and kept the money instead of remitting it to the association or board, we fail to see how the agent could not be liable under the statute.

¶ 32     The defendant argues that the plain language of section 22.1 neither requires the retention of a property manager to disclose documents and information nor imposes any affirmative duties on property managers. It argues that the statute places duties, including the duty of imposing reasonable charges, only upon unit owners' associations. While the defendant may be correct that it was not required to take on the Kenmore Club Association's statutory responsibilities under section 22.1, it is undisputed in this instance that it did so and agreed to act as Kenmore Club Association's agent for that purpose. Having agreed to act as agent, the defendant can be held liable if it takes an active part in violating a statutory duty that its principal owes to a third party. *Landau*, 409 Ill. at 564.

¶ 33     The defendant argues that the plaintiffs' only cause of action was against the Kenmore Club Association, which is the only party upon which the statute imposes responsibilities or duties. The defendant points out that the Kenmore Club Association, as principal, had the ability by contract to limit the prices that the defendant, as its agent, could charge unit owners for providing documents under section 22.1. It states that regardless of the delegation by Kenmore Club Association of its duties or the defendant's agreement to perform them, Kenmore Club Association still owed the plaintiffs a statutory duty to keep costs reasonable. It contends that if the plaintiffs were dissatisfied with the charges for documents, the party from whom they should have sought recourse was the Kenmore Club Association. We reject this argument. Whether the plaintiffs could also assert a cause of action against Kenmore Club Association based on the defendant's agreement to perform its duties under section 22.1 is not the issue before this court. In any event, the defendant could be liable as agent it if took an active part in violating a statutory duty that Kenmore Club Association owed to the plaintiffs. See *id.*

¶ 34     The defendant also directs our attention to section 19 of the Condominium Property Act,

which addresses a unit owner's right to inspect, examine, and copy various documents to be kept by a unit owner's association, including the association's governing documents, articles of incorporation, meeting minutes, insurance policies, contracts, information about voting members, ballots and proxies, and books and records. 765 ILCS 605/19(a), (b), (e) (West 2016). Section 19(f) provides that the "actual cost" to the association of retrieving, copying, or making the records available may be charged "by the association to the requesting member." *Id.* § 19(f). Section 19(b) contemplates that a unit owner who is denied the right to inspect, examine, or make copies of the listed records may bring an "enforcement action" in which the prevailing owners "shall be entitled to recover reasonable attorney's fees and costs from the association." *Id.* § 19(b). The defendant argues that section 19 demonstrates a legislative intent of the Condominium Property Act to impose duties on associations and boards of managers, not property managers or agents, and that the parties against whom unit owners "displeased with the cost of documents" shall have recourse are associations and boards.

¶ 35    Overall, we find the language of section 19, which appears to contemplate an express cause of action, unhelpful to our interpretation of section 22.1, which we have held permits an implied cause of action. Whether section 19 would permit a cause of action against a managing agent that takes on an association's duties under that section is not before us. Ultimately, we cannot agree that section 19 demonstrates a legislative intent that only a condominium association or its board of managers may be held liable if a managing agent has accepted a delegation of the association's duties to provide documents and information required by section 22.1 and that agent takes an active part in violating the statutory duty owed by the association or board to a unit owner.

¶ 36    Finally, the defendant argues that it is no different than other vendors hired by a condominium association—such as painters, electricians, roofers, or landscapers—and it points out that the

Condominium Property Act does not control what such vendors may charge for services even though they are ultimately paid for by unit owners. The defendant asserts that the Condominium Property Act does not authorize unit owners to sue vendors with whom they have no contractual relationship. While there may be a number of distinctions between a condominium association's managing agent and the painters, electricians, roofers, or landscapers it hires, the primary difference would be that the latter are independent contractors. They are not agents acting on behalf of the association who have undertaken the performance of the association's statutory duties owed to unit owners. Thus, the fact that the Condominium Property Act does not control what such independent contractor vendors may charge for services or authorize unit owners to sue such vendors has no bearing on the certified question in this case.

¶ 37                                    III. CONCLUSION

¶ 38        For the foregoing reasons, our answer to the certified question is that section 22.1 of the Condominium Property Act (765 ILCS 605/22.1 (West 2016)) provides an implied cause of action in favor of a condominium unit seller against a property manager, as agent of a condominium association or board of directors, based on allegations that the property manager charged excessive fees for the production of information required to be disclosed to a prospective buyer under that statute.

¶ 39        Certified question answered.

**No. 1-21-0176**

| | |
|---|---|
| **Cite as:** | *Channon v. Westward Management, Inc.*, 2021 IL App (1st) 210176 |
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 19-CH-4869; the Hon. Anna M. Loftus, Judge, presiding. |
| **Attorneys for Appellant:** | Melinda S. Kollross, Brian J. Riordan, James M. Weck, and Paul V. Esposito, of Clausen Miller P.C., of Chicago, for appellant. |
| **Attorneys for Appellee:** | Terrie C. Sullivan, Jeffrey C. Blumenthal, and Michael D. Richman, of Jeffrey C. Blumenthal Chtrd., of Northbrook, Karnig S. Kerkonian and Elizabeth Al-Dajani, of Kerkonian Dajani LLP, of Evanston, and Richard A. Greenswag, of Greenswag & Associates, P.C., of Northfield, for appellees. |