**2022 IL 128040**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

_____

(Docket No. 128040)

HARRY CHANNON *et al.*, Appellees, v. WESTWARD
MANAGEMENT, INC., Appellant.

*Opinion filed November 28, 2022.*

JUSTICE CARTER delivered the judgment of the court, with opinion.

Chief Justice Theis and Justices Anne M. Burke, Neville, Overstreet, and Holder White concurred in the judgment and opinion.

Justice Michael J. Burke specially concurred, with opinion.

## OPINION

¶ 1    In this appeal, we answer the following certified question:

"Whether section 22.1 of the Condominium Property Act provides an implied cause of action in favor of a condominium unit seller against a property

manager, as agent of a condominium association or board of directors, based on allegations that the property manager charged excessive fees for the production of information required to be disclosed to a prospective buyer under that statute."

The appellate court answered the question in the affirmative. 2021 IL App (1st) 210176, ¶ 38.

¶ 2        After applying the test from *Metzger v. DaRosa*, 209 Ill. 2d 30, 36 (2004), we conclude that section 22.1 of the Condominium Property Act (Act) (765 ILCS 605/22.1 (West 2016)) does not create an implied private right of action by condominium unit sellers. Because we answer the certified question in the negative, we reverse the appellate court judgment and remand the cause to the circuit court.

¶ 3                                    I. BACKGROUND

¶ 4        The plaintiffs, Harry and Dawn Channon, decided to sell their condominium unit in the Kenmore Club Condominium Association (Association). Section 22.1 of the Act (*id.*) requires condominium unit sellers to obtain specific disclosure documents from the Association or its agent prior to a sale and to provide them to potential buyers on request. After entering into a standard sales contract with a potential buyer who requested those disclosures, the Channons obtained them from the defendant, Westward Management, Inc. (Westward), a management agent hired by the Association's board of managers. Westward charged the Channons $245 for the documents.

¶ 5        The Channons later filed a class-action lawsuit in the Cook County circuit court, naming Westward as the defendant. In one count, they alleged that Westward violated section 22.1 of the Act by charging unreasonable fees for the statutorily required documents. In a separate count, their complaint asserted that Westward's conduct also violated the Consumer Fraud and Deceptive Business Practices Act (Fraud Act) (815 ILCS 505/1 *et seq.* (West 2016)).

¶ 6        Westward filed a motion to dismiss, which was denied. At Westward's request, however, the trial court certified a question of law to the appellate court:

"Whether section 22.1 of the Condominium Property Act provides an implied cause of action in favor of a condominium unit seller against a property manager, as agent of a condominium association or board of directors, based on allegations that the property manager charged excessive fees for the production of information required to be disclosed to a prospective buyer under that statute."

¶ 7    In answering the certified question, the appellate court applied the four-factor test from *Metzger*, 209 Ill. 2d at 36. The *Metzger* test examines whether (1) the plaintiffs are members of the class the statute was intended to benefit, (2) the statute was designed to prevent the plaintiffs from suffering the injury they incurred, (3) the statute's purpose is consistent with the creation of a private right of action, and (4) it is necessary to imply a private right of action to provide an adequate remedy for the statutory violation. *Id.*

¶ 8    After reviewing the first factor, the appellate court determined that, while the primary purpose of section 22.1 was to protect potential buyers, it was also intended to protect sellers. 2021 IL App (1st) 210176, ¶ 21. Because sellers typically lack personal access to the mandated disclosure documents, they must seek them from their condominium associations. By limiting the fee that could be charged for those documents, that section benefitted the sellers who were required to provide them to potential buyers. The appellate court concluded, therefore, that the Channons were members of a class that section 22.1 was intended to benefit, satisfying the first factor in the *Metzger* test. *Id.* ¶ 22.

¶ 9    In considering the second *Metzger* factor, the appellate court noted that section 22.1 permits sellers to be charged " '[a] reasonable fee covering the direct out-of-pocket cost of providing [the required] information.' " *Id.* ¶ 23 (quoting 765 ILCS 605/22.1(c) (West 2016)). Because Westward allegedly charged fees that exceeded its "direct out-of-pocket costs," the appellate court concluded that the Channons incurred precisely the type of injury the statute was intended to prevent. *Id.*

¶ 10    The court then reviewed the third factor of the *Metzger* test. *Id.* ¶ 24. It concluded that implying a private right of action for sellers required to pay excessive fees to obtain the mandated disclosure documents was consistent with the legislative intent expressed in section 22.1 because placing a ceiling on the fees that could be charged protects sellers. *Id.*

¶ 11    Addressing the fourth *Metzger* factor, the appellate court found that implying a private right of action was necessary to give unit sellers an adequate remedy for violations of section 22.1. *Id.* ¶ 25. Because the statute lacked an express enforcement mechanism, the appellate court believed it would be ineffective if a private right of action were not implied. *Id.* Stating that the issue was not part of the certified question before it and had been insufficiently briefed, the appellate court declined to address Westward's argument that here the Fraud Act provides the Channons with an adequate alternative source of relief. *Id.* ¶ 26.

¶ 12    By answering the certified question in the affirmative, the appellate court rejected the contrary holdings in *Horist v. Sudler & Co.*, 941 F.3d 274 (7th Cir. 2019), *Ahrendt v. Condocerts.com, Inc.*, No. 17-cv-8418, 2018 WL 2193140, at *2 (N.D. Ill. May 14, 2018), and *Murphy v. Foster Premier, Inc.*, No. 17 CV 8114, 2018 WL 3428084, at *3 (N.D. Ill. July 16, 2018), because they construed the legislative purpose underlying section 22.1 too narrowly. 2021 IL App (1st) 210176, ¶ 27. The court also distinguished the decisions in *Nikolopulos v. Balourdos*, 245 Ill. App. 3d 71 (1993), and *D'Attomo v. Baumbeck*, 2015 IL App (2d) 140865, finding that they did not address the question of whether section 22.1 was intended to protect sellers. 2021 IL App (1st) 210176, ¶ 27. Thus, the court effectively upheld the trial court's denial of Westward's dismissal motion.

¶ 13    The appellate court next considered whether a seller's section 22.1 implied a private right of action could be asserted against a property manager that was acting as the agent of a condominium board of managers, such as Westward. *Id.* ¶ 28. Westward contended that section 19 of the Act obliged only the Association, not its contractual agent, to provide sellers with the specified information at its actual cost. Westward asserted that an aggrieved seller could still pursue a direct cause of action against the Association for breach of its statutory duty. See 765 ILCS 605/19 (West 2016). By creating a remedial action under section 19, the legislature demonstrated its intent to make condominium associations and boards of managers directly responsible for providing the mandated disclosures at a reasonable cost.

¶ 14    The appellate court rejected that argument and declined to apply section 19 as an interpretative guide for construing section 22.1, reasoning that section 19 lacked a clear legislative intent to impose exclusive liability for section 22.1 violations on associations and their boards. 2021 IL App (1st) 210176, ¶ 35. Because Westward

contracted with the Association to act as its agent for the purpose of fulfilling its statutory duties under the Act, the appellate court concluded that Westward could also be liable if it actively participated in breaching the Association's section 22.1 duty. *Id.*; see *Landau v. Landau*, 409 Ill. 556, 564 (1951).

¶ 15    Westward filed a petition for leave to appeal in this court, and we allowed that petition. Ill. S. Ct. R. 308 (eff. July 1, 2017); R. 315 (eff. Oct. 1, 2021).

¶ 16                                II. ANALYSIS

¶ 17    The only issue before this court is the instant certified question:

> "Whether section 22.1 of the Condominium Property Act provides an implied cause of action in favor of a condominium unit seller against a property manager, as agent of a condominium association or board of directors, based on allegations that the property manager charged excessive fees for the production of information required to be disclosed to a prospective buyer under that statute."

The resolution of that question requires us to construe the Act, creating a question of law that we review *de novo*. *Metzger*, 209 Ill. 2d at 34. In construing a statute, our principal objective is to ascertain and effectuate the underlying legislative intent. The best way to accomplish that goal is to apply the plain language of the statute, when read as a whole, whenever possible. *Id.* at 34-35, 37.

¶ 18    In relevant part, section 22.1 of the Act states:

> "§ 22.1. (a) In the event of any resale of a condominium unit by a unit owner other than the developer such owner shall obtain from the Board of Managers and shall make available for inspection to the prospective purchaser, upon demand, the following:
>
>> (1) A copy of the Declaration, by-laws, other condominium instruments and any rules and regulations.
>
>> (2) A statement of any liens, including *** unpaid assessments and other charges due ***.

(3) A statement of any capital expenditures anticipated by the unit owner's association ***.

(4) A statement of the status and amount of any reserve for replacement fund and any portion of such fund earmarked for any specified project ***.

(5) A copy of the statement of financial condition of the unit owner's association for the last fiscal year ***.

(6) A statement of the status of any pending suits or judgments in which the unit owner's association is a party.

(7) A statement setting forth what insurance coverage is provided for all unit owners by the unit owner's association.

(8) A statement that any improvements or alterations made to the unit, or the limited common elements assigned thereto, by the prior unit owner are in good faith believed to be in compliance with the condominium instruments.

(9) The identity and mailing address of the principal officer of the unit owner's association *** as is specifically designated to receive notices."

(b) The principal officer of the unit owner's association *** shall furnish the above information when requested to do so in writing and within 30 days of the request.

(c) ***

A reasonable fee covering the direct out-of-pocket cost of providing such information and copying may be charged by the association or its Board of Managers to the unit seller for providing such information." 765 ILCS 605/22.1 (West 2016).

¶ 19    Breaking section 22.1 into its component parts, subsection (a) requires owners who wish to sell their condominium units to obtain and disclose specific information about the legal structure and rules of the condominium association as well as information about its financial status. *Id.* § 22.1(a). Subsection (b) effectuates subsection (a) by requiring the association to provide that

documentation within 30 days of the seller's written request. *Id.* § 22.1(b). Finally, subsection (c) establishes a ceiling for the fee sellers may be charged to obtain that information. That fee must be "reasonable" and reflect the "direct out-of-pocket cost of providing such information and copying." Notably, subsection (c) refers to only a fee that "may be charged by the association or its Board of Managers to the unit seller." *Id.* § 22.1(c). Here, the Association chose not to fulfill that duty itself, instead contracting with Westward to provide the requisite information, along with other enumerated duties.

¶ 20    The instant appeal arose after the Channons, who wished to sell the condominium unit they owned, filed a lawsuit against Westward, alleging that the $245 fee it charged them to obtain the subsection (a) disclosures violated the "reasonable fee" limitation set forth in subsection (c). They did not pursue a potential statutory claim against the Association or its board of managers. Because the Act does not expressly provide for a private right of action against an agent of an association such as Westward, we are asked to determine whether section 22.1 creates an implied right of action by a unit seller against the designated agent of a condominium association for an alleged violation of subsection (c). As this court has explained, "we will 'imply a private remedy where there exists a *clear need* to effectuate the purpose of an act.' " (Emphasis in original.) *Board of Education of Chicago v. A, C & S, Inc.*, 131 Ill. 2d 428, 471 (1989) (quoting *Sawyer Realty Group, Inc. v. Jarvis Corp.*, 89 Ill. 2d 379, 389 (1982)). Our prior case law has implied that remedy only if "the statute would be ineffective, as a practical matter, unless a private right of action were implied." *Abbasi v. Paraskevoulakos*, 187 Ill. 2d 386, 395 (1999).

¶ 21    In answering a certified question addressing whether an Illinois Personnel Code (20 ILCS 415/19c.1 (West 2002)) provision created an implied private right of action in *Metzger*, 209 Ill. 2d at 36, we applied the four-factor test previously set out in *Fisher v. Lexington Health Care, Inc.*, 188 Ill. 2d 455, 460 (1999). Under the *Metzger* test, courts examine whether (1) the plaintiffs are members of the class the statute was intended to benefit, (2) the statute was designed to protect the plaintiffs from suffering the kind of injury they incurred, (3) the statute's purpose is consistent with the creation of a private right of action, and (4) it is necessary to imply a private right of action to provide an adequate remedy for a violation of the

statute. *Metzger*, 209 Ill. 2d at 36. The appellate court and the parties to this appeal all employed that test, and we agree that it is dispositive.

¶ 22     Turning to the first factor, we consider whether the Channons are part of the class section 22.1 was intended to benefit. The parties' arguments largely focus on whether the plaintiffs are members of the class the legislature intended to *primarily* benefit or if their receipt of a merely incidental benefit is sufficient to confer class status. Westward argues that, as unit sellers, the Channons must establish that the legislature intended them to receive the *primary* benefit of the statutory protection. For their part, the Channons contend that receiving even an incidental benefit will suffice.

¶ 23     The test recited in *Metzger*, 209 Ill. 2d at 36, did not expressly require the plaintiffs to be the intended recipients of a "primary" benefit. Throughout our analysis, however, we sprinkled numerous references to receipt of a "primary" benefit, adding that judicial gloss to the first factor. See *id.* at 38 (The court stated that, "[w]hen viewed as a whole, it is clear that the Personnel Code was primarily designed to benefit the state and the people of Illinois by ensuring competent employees for government bodies," (citing *Fisher*, 188 Ill. 2d at 463), for the proposition that the "primary purpose of Nursing Home Care Act is to protect nursing home residents, despite specific provision protecting nursing home employees from retaliation for reporting violation of Act," and concluding "that the Personnel Code was enacted primarily to benefit the state and the people of Illinois by providing efficient government administration. Therefore, Metzger is not a member of the primary class for whose benefit the statute was enacted."); *id.* at 39 (explaining that "[j]ust as state employees are not the class for whom the statute was primarily enacted to benefit, it is clear that the Personnel Code was not primarily designed to prevent retaliation against state employees").

¶ 24     Read in its entirety, section 22.1(a) expressly obliges a condominium owner who wishes to resell a unit to "obtain from the Board of Managers and *** make available for inspection to the prospective purchaser, upon demand" a comprehensive assortment of information related to the financial obligations and well-being of the unit and its condominium association. Applying the plain meaning of the statutory language, sellers were given a duty to disclose, not a protection. See 765 ILCS 605/22.1(a) (West 2016). The mandate that sellers make

those disclosures was clearly intended to protect potential buyers by providing them with information vital to making their purchasing decisions. It is virtually unimaginable that the legislature's decision to include that litany of nine distinct types of mandated disclosures was intended to protect anyone other than a potential unit buyer. We conclude that section 22.1(a)'s mandated disclosures establish a clear legislative intent to impose a duty on unit sellers for the sole benefit of potential buyers.

¶ 25        That conclusion is furthered by our review of subsection (b), requiring the association's "principal officer" to make those mandated disclosures within 30 days of a written request by a seller. *Id.* § 22.1(b). On its face, the plain language of that requirement again protects only potential buyers by providing them with timely access to information needed to make their purchasing decisions. The time limit offers no benefit to unit sellers that we can discern.

¶ 26        Nonetheless, the Channons argue that subsection (c) shows a legislative intent to provide unit sellers with a benefit by limiting the sum they may be charged to obtain disclosures to "[a] reasonable fee covering the direct out-of-pocket cost of providing such information and copying." *Id.* § 22.1(c). Although the Channons maintain that this limit is plainly intended to benefit sellers by making the requisite documents more affordable for them to obtain, that language can just as readily be viewed as aiding potential buyers by ensuring that information critical to their purchasing decisions is readily available. In that way, the protections in subsection (c) are similar to the time limit the legislature imposed on associations stated in subsection (b).

¶ 27        Reading section 22.1 as a whole and applying the judicial gloss announced in *Metzger*, the legislative intent of that section is primarily to benefit potential unit buyers. The single benefit arguably bestowed on sellers in subsection (c) is merely incidental to the underlying purpose of section 22.1. We hold that the plain and ordinary meaning of that section clearly establishes the legislature's intent of protecting potential buyers of condominium units. Because the Channons are not members of a class the legislature primarily intended to benefit in section 22.1, they have failed to establish the first prong of the *Metzger* test.

¶ 28        Although we need not look further than the plain statutory language in our analysis, we note that this conclusion is further bolstered by the legislative history

of section 22.1. Because that section was not originally part of the Act, potential buyers originally had no statutory right to receive information about the operation and incurred expenses of a condominium unit or its association. When section 22.1 was added in 1980 to enable buyers to make better informed decisions, associations were permitted to charge sellers a "reasonable fee" "not to exceed 10 cents per page of copy." Ill. Rev. Stat. 1981, ch. 30, ¶ 322.1. Sellers, however, had to provide buyers with that information free of charge. See *id.* By imposing the expense of providing the requisite disclosures on sellers rather the buyers, the amendment's plain language strongly suggests that the legislature intended to primarily benefit buyers.

¶ 29　　Moreover, eight years before section 22.1 was enacted, section 22 required developers to disclose similar information to the original buyers of new condominium units. See Ill. Rev. Stat. 1973, ch. 30, § 322. The House sponsor of that provision deemed it a " 'truth in selling' " bill. *Mikulecky v. Bart*, 355 Ill. App. 3d 1006, 1011 (2004) (quoting 77th Ill. Gen. Assem., House Proceedings, May 15, 1972, at 149 (statements of Representative Regner)). In *Mikulecky*, our appellate court concluded that the primary purpose of section 22 was to meet "the need for purchaser protection" from hidden management agreements. *Id.* Later, section 22 served as a model for section 22.1, suggesting that the legislature intended to imbue section 22.1 with that same primary purpose. Indeed, in *Nikolopulos*, 245 Ill. App. 3d at 77, the appellate court reached the same conclusion, determining that section 22.1 was "clearly designed to protect prospective purchasers of condominium units." Similarly, in *D'Attomo*, the appellate court expressly followed *Nikolopoulos* and *Mikulecky* (*D'Attomo*, 2015 IL App (2d) 140865, ¶¶ 34, 37), concluding that section 22.1 was enacted with the goal of protecting potential unit buyers (*id.* ¶¶ 39, 47).

¶ 30　　Federal case law addressing section 22.1 has also reached that conclusion. In *Horist*, 941 F.3d 274, the Seventh Circuit Court of Appeals affirmed the trial court's finding that condominium unit sellers in a class-action lawsuit had no express or implied cause of action for alleged violations of the fee limits imposed in section 22.1. In reaching that conclusion, the Seventh Circuit applied the four-factor *Metzger* test and relied on our appellate court's analysis in *Nikolopulos*, stating that it "largely control[led] the outcome." *Id.* at 279. Concluding that section 22.1 was intended to protect potential buyers, the Seventh Circuit expressly rejected the

argument raised here by the Channons, namely that the fee limit in section 22.1 indicates a legislative intent to protect sellers. *Id.* We join the Seventh Circuit in rejecting that argument in light of the plain meaning of the statutory language enacted.

¶ 31        As we recognized in *Abbasi*, 187 Ill. 2d at 393, without a "clear need" for this court to imply a private right to obtain relief, "[i]t is unnecessary to analyze in detail all four" *Metzger* factors. Because the Channons have failed to establish the first factor by showing that they are members of the class the Act was intended to benefit, they cannot prove a "clear need" for an implied private right of action. Under the facts of this case, we conclude the legislature did not intend section 22.1 to imply a private right to relief for unit sellers such as the Channons.

¶ 32                                    III. CONCLUSION

¶ 33        The standard that must be met for a court to imply a private right of action in a statute is quite high. We will take that extraordinary step only when it is clearly needed to advance the statutory purpose and when the statute would "be ineffective, as a practical matter, unless a private right of action were implied." *Id.* at 395; see *A, C & S, Inc.*, 131 Ill. 2d at 471 (citing *Sawyer Realty*, 89 Ill. 2d at 389). That high bar was not overcome here.

¶ 34        We hold that section 22.1 of the Condominium Property Act does not create an implied private right of action by a condominium unit seller against an agent of a condominium association or its board of managers for allegedly violating the fee limitations set forth in subsection 22.1(c). Accordingly, we answer the certified question in the negative and reverse the judgment of the appellate court, and remand the cause to the circuit court for further proceedings consistent with this opinion.

¶ 35        Certified question answered.

¶ 36        Reversed and remanded.

¶ 37        JUSTICE MICHAEL J. BURKE, specially concurring:

¶ 38 I agree with the analysis and the result in this case. I write separately because I believe that this court should make clear that a court will not find an implied private right of action unless all four parts of the test are met. That this is the case is obvious from the way the court lists the factors:

> "Implication of a private right of action is appropriate *if*: (1) the plaintiff is a member of the class for whose benefit the statute was enacted; (2) the plaintiff's injury is one the statute was designed to prevent; (3) a private right of action is consistent with the underlying purpose of the statute; *and* (4) implying a private right of action is necessary to provide an adequate remedy for violations of the statute." (Emphases added.) *Fisher v. Lexington Health Care, Inc.*, 188 Ill. 2d 455, 460 (1999).

This court has stated that a private right of action will be implied only if four elements, joined by the conjunction "and," are established, and this is precisely how other courts have read our cases. See *Horist v. Sudler & Co.*, 941 F.3d 274, 278-79 (7th Cir. 2019) ("[a]ll four factors must be met before a court will recognize an implied remedy"); *Marque Medicos Fullerton, LLC v. Zurich American Insurance Co.*, 2017 IL App (1st) 160756, ¶ 57 ("[a]ll four factors must be met before a private right of action will be implied"). The majority apparently recognizes this, as it ends its analysis after finding that the plaintiffs failed to establish one of the factors. Moreover, it is clear just from reading the factors that a court would not find an implied private right of action if one of them could not be met.

¶ 39 Instead of making this point clear once and for all, the majority perpetuates the confusing language that this court used in *Abassi v. Paraskevoulakos*, 187 Ill. 2d 386 (1999), which suggests that there is a "clear need" consideration that determines whether a court considers all of the factors. *Supra* ¶ 31. In *Abassi*, this court said:

> "It is unnecessary to analyze in detail all four of these factors as they apply to the Act and to these parties. As this court observed in *Board of Education v. A, C & S, Inc.*, 131 Ill. 2d 428, 471 (1989): '*Sawyer* was clear that we will "imply a private remedy where there exists a *clear need* to effectuate the purpose of an act." (Emphasis added.) (89 Ill. 2d at 389.) In this case there does not exist a clear need.' An application of the fourth factor to this case leads to the same conclusion." *Abassi*, 187 Ill. 2d at 393.

I would simply say what the courts in *Horist* and *Marque Medicos* said: all four factors must be met before this court will find an implied private right of action.