# Illinois Official Reports

## Supreme Court

---

### *Rice v. Marathon Petroleum Corp.*, 2024 IL 129628

---

| | |
|---|---|
| Caption in Supreme Court: | LAURA E. RICE, as Special Representative of the Estate of Margaret L. Rice, Deceased, Appellant, v. MARATHON PETROLEUM CORPORATION *et al.*, Appellees. |
| Docket No. | 129628 |
| Filed | May 23, 2024 |
| Decision Under Review | Appeal from the Appellate Court for the First District; heard in that court on appeal from the Circuit Court of Cook County, the Hon. James. M. Varga, Judge, presiding. |
| Judgment | Judgments affirmed. |
| Counsel on Appeal | Matthew M. Vasconcellos, of Vasconcellos Law Group LLC, and John J. Budin, both of Chicago, and Michael T. Reagan, of Ottawa, for appellant. <br><br> James R. Branit and Natasha Singh, of Litchfield Cavo LLP, of Chicago, for appellees. |

Justices          JUSTICE O'BRIEN delivered the judgment of the court, with opinion.
Chief Justice Theis and Justices Neville, Overstreet, Holder White, and Cunningham concurred in the judgment and opinion.
Justice Rochford took no part in the decision.

## OPINION

¶ 1      An injured condominium resident brought suit against the owners and operators of an underground storage tank that leaked gasoline and caused the resident serious injuries at her condominium more than a mile away from the tank. The suit alleged common-law negligence and liability based on the violation of Illinois environmental statutes and regulations governing underground storage tanks. Relevant to the issues before this court, the Cook County circuit court dismissed the statutory claims, and the appellate court affirmed. We agree with the lower courts that the statutes at issue here do not create private statutory rights of action, express or implied, so we affirm the dismissal of the statutory claims.

¶ 2                                I. BACKGROUND

¶ 3      The resident, Margaret L. Rice, was injured on October 20, 2017, while laundering her clothes in her condominium complex. Margaret died during the course of the litigation, and plaintiff, Margaret's daughter Laura E. Rice, was appointed as a special representative for the purpose of prosecuting the action.

¶ 4      The following facts are as alleged in plaintiff's amended complaint. Defendants, the owners and operators of a Speedway gas station more than a mile from Margaret's condominium, stored gasoline in a leaking underground storage tank. The three defendants named in the amended complaint are the gas station, Speedway, LLC; the gas station manager, Manoj Valiathara; and the gas station owner, Marathon Petroleum Corporation. The gas station was connected to a common sanitary sewer system via a sanitary sewer line on the premises that was routed to the Flagg Creek Water Reclamation District sanitary sewer. A storm sewer system managed by Du Page County was located under the western portion of the gas station property. Both sewer systems were identified as existing and potential migration pathways and exposure routes that could be adversely affected by a petroleum release from the gas station's underground storage tank system. Six single-walled fiberglass underground storage tanks, and associated ancillary equipment, made up the underground storage tank system for the gas station. One of those tanks was a 10,000-gallon tank that stored regular unleaded gasoline, which was installed and became operational in 1989.

¶ 5      On October 5, 2017, a system high water warning was triggered at the gas station, and the underground storage tank system was inspected. Approximately 1000 gallons of water were vacuumed or pumped from the subject tank. After additional monitoring and maintenance, approximately 1145 gallons of water were vacuumed or pumped from the subject tank on October 10, 2017. According to recordings from the automatic tank gauge system, the subject tank began alarming on January 9, 2017. The tank's recorded water level increased from approximately 10.7233 inches on October 9, 2017, to approximately 93.3065 inches on

October 15, 2017. This indicated the release or displacement of gasoline from the subject tank into the surrounding area and environment, of which defendants were aware. The displaced gasoline migrated through soil toward the sanitary sewer system, and gasoline entered the sanitary sewer system through one or more entry points. After entering the sanitary sewer system, the gasoline and associated vapors were transported away from the gas station and in the direction of Margaret's condominium.

¶ 6 At approximately 5 p.m. on October 19, 2017, an odor resembling nail polish remover and a high "lower explosive limit" of unknown origin were detected in the basement-level apartment units at an apartment building just east of Margaret's building and reported to the Illinois Emergency Management Agency. The apartment building was about 1.5 miles from the gas station. Around 9 a.m. on October 20, 2017, Margaret was laundering her clothes in the residential laundry room. When Margaret activated the clothes dryer, a spark from the dryer ignited gasoline vapors and caused an explosion. The force of the explosion threw Margaret from the laundry room and into the hallway wall. Margaret suffered second degree burns over at least 10% of her body, along with other injuries. She spent two weeks in an intensive care burn unit and then seven more weeks at rehabilitation facilities. Several other explosions and fires occurred on the same day. Margaret's residence was significantly damaged; she was not able to return to her home for over a year while the damage was remediated.

¶ 7 Prior to the explosion, the Village of Willowbrook public works division had traced the source of the odors and vapors to the gasoline released from the gas station, and it alerted the fire department.

¶ 8 The original complaint contained four counts, alleging negligence by each of four defendants. After Margaret died and her daughter was substituted as plaintiff, an amended complaint was filed against the three remaining defendants. The amended complaint contained nine counts. Counts I, II, and III allege bodily injury to Margaret resulting from the release of petroleum from an underground storage tank and seek to recover in strict liability against each defendant pursuant to Illinois's Environmental Protection Act (Act), specifically title XVI, "Petroleum Underground Storage Tanks" (415 ILCS 5/57 to 57.19 (West 2018)). Counts IV, VI, and VIII allege negligence by defendants that caused petroleum to leak from an underground storage tank and caused Margaret's injuries. Counts V, VII, and IX allege that the negligence claims survive Margaret's death pursuant to the Survival Act (755 ILCS 5/27-6 (West 2018)).

¶ 9 Defendants filed a motion to dismiss counts I, II, and III of the amended complaint pursuant to section 2-619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2018)). Defendants sought dismissal pursuant to section 2-619(a)(3) of the Code (*id.* § 2-619(a)(3)), arguing that counts I, II, and III were duplicative of the action brought by the attorney general[1] on behalf of the State of Illinois against defendant Speedway, LLC. Defendants also sought dismissal of counts I, II, and III pursuant to section 2-615 of the Code (*id.* § 2-615) on the basis that plaintiff lacked standing to bring an action for private remedies under the Act.

---

[1]A consent order was entered on December 4, 2018, in the proceeding brought by the attorney general for the State of Illinois and the state's attorney for Du Page County, Illinois, against defendant Speedway, LLC, alleging air and water pollution. Speedway, LLC, was ordered to pay a civil penalty to be deposited in the Environmental Protection Trust Fund. Speedway, LLC, agreed to certain correction and compliance activities, with penalties for failing to comply.

¶ 10 The trial court granted the motion to dismiss counts I, II, and III pursuant to section 2-615 of the Code for failing to state a claim upon which relief could be granted. The trial court concluded that the Act did not provide a private right of action for plaintiff's requested remedies. The order contained an express finding that "[t]here was no just reason for delaying either enforcement or appeal." See Ill. S. Ct. R. 304(a) (eff. Mar. 8, 2016). Plaintiff's motion for reconsideration was denied, and plaintiff appealed.

¶ 11 The appellate court initially dismissed the appeal for lack of appellate jurisdiction, finding that the negligence counts were still pending and the statutory counts were based on the same operative facts and amounted to the same basic claim. Upon plaintiff's petition for rehearing, the appellate court issued a modified order, finding that it had jurisdiction because the statutory and the negligence counts sought different remedies. While all claims were based on the same operative facts, the negligence counts sought compensatory damages, while the statutory counts sought all damages allowed under the Act, including punitive damages. 2022 IL App (1st) 220155-U, ¶ 17.

¶ 12 After considering the merits of the appeal, the appellate court affirmed the dismissal of counts I, II, and III of plaintiff's complaint. It concluded that plaintiff did not have a private right of action, express or implied, under the leaking underground storage provisions of the Act. Plaintiff did not cite any language in the leaking underground storage provisions of the Act that directly stated third parties may bring a private action to recover for personal injuries, "underscor[ing] that a private right of action is not clearly and unmistakably communicated in the statute." *Id.* ¶ 19. The court proceeded to apply the four factors identified in *Fisher v. Lexington Health Care, Inc.*, 188 Ill. 2d 455, 460 (1999), to determine whether a private right of action was implied. 2022 IL App (1st) 220155-U, ¶ 20. The court concluded that it did not need to analyze all four factors because plaintiff did not show the fourth factor; implying a private right of action under the leaking underground storage provisions of the Act was not necessary to provide an adequate remedy for violations of those provisions. *Id.* ¶ 24. Rather, since any regulatory or statutory violations committed by defendants could be used as *prima facie* evidence to prove the negligence elements of duty and breach of duty by defendants in a common-law negligence action, the common-law negligence action was an adequate remedy. *Id.* ¶ 23. The court rejected plaintiff's argument that a private right of action was necessary to subject violators to the higher standard of strict liability, finding that section 57.12(g) of the Act (415 ILCS 5/57.12(g) (West 2018)) related solely to the costs of investigation, prevention, correction, and enforcement by the State and did not modify liability for damages to a third party resulting from a release of petroleum. 2022 IL App (1st) 220155-U, ¶ 26. In addition, the court concluded that a private right of action was unnecessary to provide an adequate remedy because violators were also subject to actions by the State and possible criminal penalties. *Id.* ¶ 25. We allowed plaintiff's petition for leave to appeal on September 27, 2023. Ill. S. Ct. R. 315 (eff. Oct. 1, 2021).

¶ 13                                   II. ANALYSIS

¶ 14 We begin by addressing the jurisdiction of the appellate court, although the issue of jurisdiction was not raised in the petition for leave to appeal or the briefs in this court. See *People v. Vara*, 2018 IL 121823, ¶ 12 ("a reviewing court is obligated to ascertain its jurisdiction before proceeding in a cause of action, regardless of whether the issue has been

- 4 -

raised by either party"). The trial court judgment did not dispose of all of plaintiff's claims but included an express finding that there was no just reason for delay in enforcement or appeal, so the appeal was brought pursuant to Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016) (authorizing certain appeals from final judgments that do not dispose of an entire proceeding). After analyzing the claims as alleged by plaintiff, we agree with the appellate court that, although the negligence and statutory claims have facts in common, they are not "different iterations of the very same claim." *Blumenthal v. Brewer*, 2016 IL 118781, ¶ 26. Thus, we agree that the appellate court had jurisdiction[2] and turn to the merits of the appeal.

¶ 15                                    A. Express Right of Action

¶ 16    Plaintiff argues that, taken as a whole, the statutory scheme governing underground storage tanks expressly provides for the availability of a private right of action to recover for injuries resulting from a leaking underground storage tank. Defendants point out that plaintiff does not cite any specific statutory language that clearly or unmistakably states that private parties may bring suit under the leaking underground storage tank provisions of the Act for personal injuries. Plaintiff acknowledges that there is no single provision that provides a private right of action. Rather, plaintiff pieces together provisions from Illinois and federal environmental statutes, along with regulations promulgated thereunder, arguing that those provisions together create an express private right of action to recover for personal injuries resulting from a leaking underground storage tank.

¶ 17    To properly analyze plaintiff's claim, we begin by reviewing the statute that created the leaking underground storage tank program and the related environmental statutes and regulations. Title XVI of the Act, titled "Petroleum Underground Storage Tanks," was enacted in accordance with the Hazardous and Solid Waste Amendments of 1984 of the Resource Conservation and Recovery Act of 1976 (RCRA) (42 U.S.C. § 6901 *et seq.* (2018)) and in accordance with the State's interest in protecting its land and water resources. 415 ILCS 5/57 (West 2018). Title XVI implements the Leaking Underground Storage Tank Program (LUST Program). *Id.* The purpose of the LUST Program is:

> "(1) to adopt procedures for the remediation of underground storage tank sites due to the release of petroleum and other substances regulated under this Title from certain underground storage tanks or related tank systems; (2) to establish and provide procedures for a Leaking Underground Storage Tank Program which will oversee and review any remediation required for leaking underground storage tanks, and administer the Underground Storage Tank Fund; (3) to establish an Underground Storage Tank Fund intended to be a State fund by which persons who qualify for access to the Underground Storage Tank Fund may satisfy the financial responsibility requirements under applicable State law and regulations; (4) to establish requirements for eligible owners and operators of underground storage tanks to seek payment for any costs associated with physical soil classification, groundwater investigation, site classification and corrective action from the Underground Storage Tank Fund; and

_____

[2]We also note that the remaining negligence counts were settled and voluntarily dismissed by agreed order on March 2, 2022, after plaintiff's notice of appeal was filed but prior to any briefing in the appellate court. Thus, the notice of appeal became effective pursuant to the savings provision of Illinois Supreme Court Rule 303(a)(2) (eff. July 1, 2017) on that date.

(5) to audit and approve corrective action efforts performed by Licensed Professional Engineers." *Id.*

¶ 18    The Office of the State Fire Marshal and the Illinois Environmental Protection Agency are responsible for administering the LUST Program. *Id.* § 57.3. The Underground Storage Tank Fund was created pursuant to the LUST Program, which is funded with money collected from underground storage tank owners, motor fuel taxes, and other tax funds. *Id.* § 57.11. Eligible owners and operators of underground storage tanks may access the funds to pay for the investigation and cleanup of leaking underground storage tank systems. *Id.* § 57.9; see *Office of the State Fire Marshal v. Illinois Pollution Control Board*, 2022 IL App (1st) 210507, ¶ 4.

¶ 19    Subchapter IX of RCRA, which regulates underground storage tanks, directs the administrator of the federal Environmental Protection Agency to promulgate regulations for detecting, preventing, and correcting leaks from underground storage tanks. 42 U.S.C. § 6991b (2018). Subject to approval by the administrator, states may institute programs to address underground storage tank release detection, prevention, and correction, as long as the state demonstrates that the state program meets delineated standards and "provides for adequate enforcement of compliance with such requirements and standards." *Id.* § 6991c(a). If the administrator of the federal Environmental Protection Agency determines that the state program "complies with the provisions of this section and provides for adequate enforcement of compliance with the requirements and standards adopted pursuant to this section," then the state program will be approved, and the state will have primary enforcement responsibility. *Id.* § 6991c(d); see *First of America Trust Co. v. Armstead*, 171 Ill. 2d 282, 284 (1996) ("Pursuant to [RCRA], the federal Environmental Protection Agency may delegate to the states certain powers and duties to regulate tanks."), *abrogated on other grounds by Commonwealth Edison Co. v. Will County Collector*, 196 Ill. 2d 27 (2001).

¶ 20    Certain provisions of the Gasoline Storage Act (430 ILCS 15/0.01 *et seq.* (West 2018)) also regulate underground petroleum storage tanks. The Gasoline Storage Act makes it unlawful, *inter alia*, for anyone to keep or store petroleum or gasoline in a manner that would jeopardize life or property. *Id.* § 1. It authorizes the Office of the State Fire Marshal to promulgate reasonable rules and regulations to govern the keeping and storage of such substances and to certify compliant underground storage tanks. *Id.* §§ 2, 3.5. In addition, the Office of the State Fire Marshal is tasked with coordinating with the Illinois Environmental Protection Agency to administer the LUST Program. *Id.* § 4; 415 ILCS 5/22.12(a) (West 2018). The Gasoline Storage Act requires that "[e]ach owner or operator shall establish and maintain evidence of financial responsibility, as provided in this Section, for taking corrective action and compensating third parties for bodily injury and property damage." 430 ILCS 15/6.1(a) (West 2018).

¶ 21    Plaintiff argues that RCRA, the LUST Program of the Act, and the Gasoline Storage Act, combined with the regulations promulgated under each, form an interconnected regulatory scheme to govern underground storage tanks in Illinois. Plaintiff contends that RCRA authorizes private causes of action by third parties injured by violations of section 6972(a) of RCRA (42 U.S.C. § 6972(a)(1)(A) (2018)), so the LUST Program, which was enacted in accordance with the requirements of RCRA, should similarly authorize a private right of action. According to plaintiff, further evidence of this relationship between the LUST Program and RCRA is the financial responsibility provisions of the Gasoline Storage Act. Also, the

LUST Program is a provision of the Act, which plaintiff argues explicitly anticipates private remedies.

¶ 22 The claims at issue in this appeal, counts I, II, and III of the amended complaint, were dismissed pursuant to section 2-615 of the Code for failure to state a claim. A motion to dismiss under section 2-615 challenges the legal sufficiency of the complaint, so our review of such a dismissal is *de novo*. *Wakulich v. Mraz*, 203 Ill. 2d 223, 228 (2003). "The critical inquiry is whether the allegations of the complaint, when construed in a light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief may be granted. In making this determination, all well-pleaded facts in the complaint must be taken as true." *Id.*

¶ 23 We find that there is no express private right of action under the LUST Program provisions of the Act. "In construing a statute, our duty is to ascertain and give effect to the intention of the legislature." *Harvel v. City of Johnston City*, 146 Ill. 2d 277, 282 (1992). "Express" is defined as "[c]learly and unmistakably communicated; stated with directness and clarity." Black's Law Dictionary 701 (10th ed. 2014). There is no provision in the LUST Program portion of the Act that expressly grants third parties injured by leaking underground storage tanks the right to seek damages for a violation of those provisions. If the legislature had intended to create an express private right of action, it clearly knows how to do so. See, *e.g.*, 740 ILCS 14/20 (West 2022) (the Biometric Information Privacy Act provides that "[a]ny person aggrieved by a violation of this Act shall have a right of action in a State circuit court or as a supplemental claim in federal district court against an offending party"). As the appellate court aptly concluded, "[plaintiff's] strained interpretation underscores that a private right of action is not clearly and unmistakably communicated in the statute." 2022 IL App (1st) 220155-U, ¶ 19. Whether there is any right of action to be implied from the interrelated environmental statutes is a separate inquiry that will be discussed below.

¶ 24 ### B. Implied Right of Action

¶ 25 Plaintiff argues that, if there is no express right of action under the LUST Program provisions of the Act, such an action should be implied. Defendants argue that implying a private right of action when the legislature did not expressly create one is greatly disfavored and that plaintiff did not establish the necessary factors to overcome the presumption against implication.

¶ 26 A court may take the "extraordinary step" of implying a private cause of action in a statute where none is expressly provided "only when it is clearly needed to advance the statutory purpose and when the statute would 'be ineffective, as a practical matter, unless a private right of action were implied.' " *Channon v. Westward Management, Inc.*, 2022 IL 128040, ¶ 33 (quoting *Abbasi v. Paraskevoulakos*, 187 Ill. 2d 386, 395 (1999)). Courts consider four factors when determining if a statute implies a private right of action, and implication is appropriate when

> "(1) the plaintiff is a member of the class for whose benefit the statute was enacted; (2) the plaintiff's injury is one the statute was designed to prevent; (3) a private right of action is consistent with the underlying purpose of the statute; and (4) implying a private right of action is necessary to provide an adequate remedy for violations of the statute." *Fisher*, 188 Ill. 2d at 460.

¶ 27 Plaintiff argues that implication of a private right of action is appropriate because she meets all four factors. Defendants contend that plaintiff has failed to establish any of the factors, so there is no clear need to imply a statutory cause of action to advance the statutory purpose of the LUST Program provisions of the Act.

¶ 28 Applying the *Fisher* factors, we conclude that the LUST Program does not imply a private right of action for third parties who suffer personal injuries as the result of leaking underground storage tanks. Plaintiff is not a member of the class that the LUST Program was primarily intended to protect, and personal injuries are not the type that the LUST Program was designed to prevent. In addition, implying a private right of action for third parties to recover for personal injuries is not necessary to provide an adequate remedy for violations of the LUST Program.

¶ 29 The purpose of the Act and its associated regulations is to protect the environment and to minimize environmental damage. 415 ILCS 5/20(b) (West 2018); *NBD Bank v. Krueger Ringier, Inc.*, 292 Ill. App. 3d 691, 697 (1997); see *Lily Lake Road Defenders v. County of McHenry*, 156 Ill. 2d 1, 10 (1993) ("The legislature enacted the [Act] *** for the stated purpose of establishing a unified, statewide program to restore, protect and enhance the quality of the environment."). As provided above, the LUST provisions were enacted "in accordance with the State's interest in the protection of Illinois' land and water resources" to provide procedures for the remediation of leaking underground storage tank sites and to establish and administer the Underground Storage Tank Fund, which could be accessed by qualified owners or operators to meet their financial responsibility requirements under the Act. 415 ILCS 5/57 (West 2018).

¶ 30 A review of the LUST Program and its regulations indicates that the Act, and the LUST Program in particular, was intended to protect resources, not to protect third parties injured by leaking underground storage tanks or to provide them with a cause of action for those personal injuries. While plaintiff is a member of the general public, who would benefit from the protection of the environment and could be harmed by acts that harm the environment, plaintiff is not a member of the class that the legislature primarily intended to benefit. See *Channon*, 2022 IL 128040, ¶ 23 (to imply a statutory private right of action, plaintiffs must be members of the class the statute was primarily intended to benefit); see also *NBD Bank*, 292 Ill. App. 3d at 697 (purchasers of real estate that is later discovered to be contaminated are not members of the class the Act was designed to protect).

¶ 31 The appellate court did not analyze all four *Fisher* factors. 2022 IL App (1st) 220155-U, ¶ 20. Rather, it concluded that plaintiff had not established the fourth *Fisher* factor, so there was no implied private right of action under the LUST Program, since implying a private right of action was not necessary to provide an adequate remedy for violations of the statute. *Id.* ¶ 24. Plaintiff contends that the application of the fourth *Fisher* factor was in error for two reasons. First, plaintiff argues that the statutory scheme imposes strict liability on owners and operators of underground storage tanks, so a common-law negligence action cannot provide an adequate remedy. Second, plaintiff argues that governmental enforcement is not adequate, alone, to achieve the stated purposes of the LUST Program provisions of the Act.

¶ 32 Underlying plaintiff's first contention is the theory that violations of the provisions of the LUST Program, read in conjunction with the statutes and regulations governing underground storage tanks, impose strict liability on the owners and operators. Plaintiff contends that the LUST Program provisions of the Act explicitly adopt a strict liability standard in section

- 8 -

57.12(g) of the Act, with reference to the standard of liability in section 22.2(f) of the Act (415 ILCS 5/22.2(f) (West 2018)).

¶ 33    Section 22.2(f) of the Act provides:

"Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (j) of this Section, the following persons shall be liable for all costs of removal or remedial action incurred by the State of Illinois or any unit of local government as a result of a release or substantial threat of a release of a hazardous substance or pesticide:

(1) the owner and operator of a facility or vessel from which there is a release or substantial threat of release of a hazardous substance or pesticide;

(2) any person who at the time of disposal, transport, storage or treatment of a hazardous substance or pesticide owned or operated the facility or vessel used for such disposal, transport, treatment or storage from which there was a release or substantial threat of a release of any such hazardous substance or pesticide." *Id.* § 22.2(f)(1), (2).

¶ 34    As noted above, in construing a statute, our duty is to ascertain and give effect to the intention of the legislature. The most reliable indication of legislative intent is the language of the statute, giving the language its plain and ordinary meaning. *Dynak v. Board of Education of Wood Dale School District 7*, 2020 IL 125062, ¶ 16. We conclude that the plain and ordinary meaning of section 22.2(f) of the Act is that owners and operators are strictly liable for the costs of removal or remedial actions incurred by the State or other local governmental entities. See *id.*; *Central Illinois Light Co. v. Home Insurance Co.*, 213 Ill. 2d 141, 165-66 (2004). Further, section 57.12 of the Act expressly states that it does not affect or modify liability under the common law for damages. 415 ILCS 5/57.12(a)(1) (West 2018) ("[n]othing in this Section shall affect or modify in any way *** [t]he obligations or liability of any person under any other provision of this Act or State or federal law, including common law, for damages, injury or loss resulting from a release or substantial threat of a release as described above").

¶ 35    Similarly, the indemnification provision of the LUST Program does not support plaintiff's argument that owners and operators are strictly liable to third parties for damages caused by a release of petroleum. Rather, that provision merely describes a procedure for owners and/or operators of leaking underground storage tanks to seek reimbursement from the Underground Storage Tank Fund for the cost of corrective actions. See *id.* § 57.8.

¶ 36    The financial responsibility provision of the Gasoline Storage Act also does not support plaintiff's argument that the LUST Program provisions of the Act impose strict liability on owners and operators. Those provisions simply address the requirement that owners and operators of underground storage tanks maintain insurance to satisfy any liability. See *Carmichael v. Professional Transportation, Inc.*, 2021 IL App (1st) 201386, ¶ 32 (no private right of action implied under provision requiring minimum insurance because criminal and regulatory penalties provided adequate remedies for violations).

¶ 37    Plaintiff cites *People v. Fiorini*, 143 Ill. 2d 318 (1991), arguing the violations of the Act are *malum prohibitum*. In *Fiorini*, the attorney general sought injunctive relief and statutory penalties against the owners and operators of a waste site, in part under the Act. *Id.* at 326. The defendants sought to recover from third-party defendants for their roles in the waste disposal that caused the land pollution for alleged violations of section 21 of the Act (Ill. Rev. Stat.

1985, ch. 111½, ¶ 1021 (now 415 ILCS 5/21)). *Fiorini*, 143 Ill. 2d at 326. While discussing amendments to the provisions for third-party liability, we noted that it is settled law that knowledge and intent are not elements to be proved for a violation of the Act in an action by the attorney general against an owner or operator. *Id.* at 335. We agree that this is still the settled law. However, that does not translate into a private right of action to recover for personal injuries. While a private party may institute a citizen suit enforcement action before the Pollution Control Board, statutory penalties would not be paid to the private party but, rather, the Environmental Protection Trust Fund. See 415 ILCS 5/42 (West 2018). In fact, that has already been done in this case. We conclude that the statutory framework does not impose strict liability on claims brought by private parties to recover for personal injuries.

¶ 38 Plaintiff's second contention is that the fourth *Fisher* factor was applied in error by the appellate court because governmental enforcement is not adequate, alone, to achieve the stated purposes of the LUST Program provisions of the Act. Plaintiff argues that the Act explicitly states that governmental enforcement is not a sufficient remedy and must be supplemented by private remedies. Defendants contend that the LUST Program provisions of the Act provide a framework for enforcement via governmental enforcement. Also, violations of the Act can subject perpetrators to criminal liability in some circumstances. Public enforcement reduces the necessity of a private cause of action to effectuate the purpose of the LUST Program provisions of the Act.

¶ 39 The Act provides a framework for governmental enforcement. Any person who violates any provision of the Act, or the related regulations, is subject to civil penalties in an action brought by the attorney general or the state's attorney of the county where the violation occurred. *Id.* § 42(a), (f). The civil penalties "may, upon order of the Board or a court of competent jurisdiction, be made payable to the Environmental Protection Trust Fund, to be used in accordance with the provisions of the Environmental Protection Trust Fund Act." *Id.* § 42(a). In cases of substantial danger to the environment or to public health, the state's attorney or attorney general may institute a civil action for injunctive relief. *Id.* § 43.

¶ 40 As defendants point out, not only is the government enforcement mechanism available, it was utilized in this case. The purpose of the Act is to "establish a unified, state-wide program *** to restore, protect and enhance the quality of the environment, and to assure that adverse effects upon the environment are fully considered and borne by those who cause them." *Id.* § 2(b). The government's action and resulting penalties and injunctive relief effectuated the purpose of the Act.

¶ 41 The appellate court cited *Abbasi*, 187 Ill. 2d 386, in support of its conclusion there was no need to imply a private cause of action in this case. In *Abbasi*, the plaintiff sought damages for injuries incurred from ingesting lead-based paint, alleging, *inter alia*, violations of the Lead Poisoning Prevention Act (410 ILCS 45/1 *et seq.* (West 1996)). *Abbasi*, 187 Ill. 2d at 388. The plaintiff was a child living in an apartment, owned and managed by the defendants, where paint was deteriorating, resulting in the plaintiff ingesting lead-based paint from surfaces. We found that implying a private right of action under the Lead Poisoning Prevention Act was not necessary to provide an adequate remedy for a violation of that act. *Id.* at 393. A private cause of action would be identical to the plaintiff's common-law negligence action based on the Lead Poisoning Prevention Act's violations. *Id.*

¶ 42       In contrast, in *Rodgers v. St. Mary's Hospital*, 149 Ill. 2d 302, 309 (1992), we held that implying a private right of action was necessary because the X-Ray Retention Act (Ill. Rev. Stat. 1987, ch. 111½, ¶ 157-11 (now 210 ILCS 90/1)) did not provide for any remedy and any administrative remedy for a violation of the act would not provide an adequate remedy. In *Rodgers*, the hospital failed to preserve X-rays in accordance with the X-Ray Retention Act, which were necessary in a medical malpractice action. *Rodgers*, 149 Ill. 2d at 305. We concluded that the X-Ray Retention Act was designed to prevent the loss of evidence that may be essential to the pursuit or defense of a medical malpractice claim. *Id.* at 308. The plaintiff in a malpractice action is a member of the class for whose benefit the statute was enacted, and that injury was one the statute was designed to prevent. *Id.*

¶ 43       We find that the statutory framework and goal of the LUST Program is similar to the Lead Poisoning Prevention Act, so *Abbasi* directs our conclusion in this case. We have already concluded that the LUST Program of the Act does not impose strict liability on violators in actions by private parties alleging personal injuries. Thus, like *Abbasi*, if we were to create a private cause of action under the LUST Program provisions, it would be a negligence action and not a strict liability action. See *Abbasi*, 187 Ill. 2d at 395. The availability, and threat, of the common-law remedy effectively implements the public policy behind the LUST Program provision of the Act. That remedy, combined with governmental enforcement provisions and the threat of common-law liability, make it unnecessary to imply a private right of action.

¶ 44       We conclude that a common-law negligence action gives effect to the LUST Program provisions of the Act. Plaintiff's common-law negligence claim, based on the same acts and omissions that she alleges violated the LUST Program of the Act, is a sufficient remedy, so it is not necessary to imply a private right of action. Plaintiff has not proven a " 'clear need' for an implied private right of action." *Channon*, 2022 IL 128040, ¶ 31; see *Chrysler Realty Corp. v. Thomas Industries, Inc.*, 97 F. Supp. 2d 877, 881 (N.D. Ill. 2000) (applying Illinois law, and concluding that the Act, "which provides for enforcement by the state as well as citizen's suits before the board, more than adequately serves the purpose of the statute, and that the statute is not ineffective absent an implied right of action").

¶ 45                                    III. CONCLUSION

¶ 46       For the foregoing reasons, we affirm the appellate court's decision, which affirmed the circuit court's order dismissing counts I, II, and III of the amended complaint.

¶ 47       Judgments affirmed.

¶ 48       JUSTICE ROCHFORD took no part in the consideration or decision of this case.